Andrea **HELLER**, Appellant,

v.

**FORTIS BENEFITS INSURANCE COMPANY, Appellee.**

No. 97–7095.

United States Court of Appeals, District of Columbia Circuit.

Argued March 17, 1998.

Decided May 1, 1998.

Joseph F. Cunningham argued the cause and filed the briefs for appellant.

Jennifer Rand Stein argued the cause for appellee, with whom Grace E. Speights was on the brief.

Before: WALD, SILBERMAN and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Andrea Heller appeals the grant of summary judgment to Fortis Benefits Insurance Company ("Fortis") on her claim that the company improperly denied her disability benefits and breached its fiduciary duty in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (1994). After paying Heller disability benefits for five years, Fortis determined that she no longer qualified as disabled under its plan and terminated her benefits. The district court approved this termination and further ordered Heller to reimburse Fortis for disability payments for which she had not actually been eligible. Because Heller failed to present a genuine issue of material fact regarding her qualification for disability benefits under Fortis' plan, and because we hold that restitution was an available remedy for the company under ERISA and that the district court did not abuse its discretion in ordering the award, we affirm.

## I.

Heller worked as a marketing representative for McCue Systems, Inc. ("McCue"), beginning in March 1985. The job was stressful, and she injured her back, neck, and shoulder by carrying heavy computer equipment on numerous business trips. In January 1986, she filed for disability under McCue's health benefits plan, which provided for insurance coverage from Fortis.[1] In order to qualify as "totally disabled" under the plan and thus be eligible for payments, she had to be "unable to perform the material duties of . . . her regular occupation or employment." Agreeing that she qualified for payments as a "totally disabled" person under this definition, Fortis approved Heller's claim. She accordingly received disability benefits from Fortis for five years, from 1986 through 1991.

Under Heller's plan, however, the standards for her eligibility for benefits changed after five years and, by letter of February 4, 1991, Fortis informed Heller that it would review her continued entitlement to benefits. As Heller's plan provided, a person is "totally disabled" if

### A. Occupation Test

(i) during the first 60 months of any One Period of Total Disability, the Person Insured is under the regular care and attendance of a Licensed Physician (other than him or herself) and unable to perform the material duties of his or her regular occupation or employment; and

(ii) after the first 60 months of any One Period of Total Disability, the Person Insured is unable to perform the material duties of any and every gainful occupation or employment for which the person is or becomes reasonably fitted by education, training or experience.

While a Person Insured meets these requirements, limited employment will not interrupt the Qualifying Period or the Period of Total Disability.

### B. Earnings Test

If a Person Insured is working, and is not disabled by the Occupation Test definition of Total Disability, we will consider the Person Insured to be "Totally Disabled" during any month when he or she is not able, because of Injury, sickness or pregnancy, to earn more than 50% of his or her Monthly Earnings.

Fortis advised Heller that it would investigate the merits of her continued claim for benefits and that "the issuance of any further benefits should not be construed as an admission of liability on our part to continue benefits indefinitely beyond the first sixty months of disability."

Thereafter, Fortis commissioned Crawford & Company ("Crawford"), an employment consulting firm, to interview Heller, assess whether she could perform any jobs, and conduct a labor market survey to determine what jobs might be available for her. In its "Initial Vocational Assessment" report on March 22, 1991, Crawford concluded that Heller "possesses many transferable skills from her work history that would be useful in other less physically demanding types of work," based on her experience, college education, and sales skills. From May 10 through June 5, 1991, Crawford conducted a "Labor Market Survey" that indicated that Heller "has good transferrable skills that apply to different types of jobs that are presently available in the labor market, and those are too numerous to list here, but include customer service, bank positions, any retail, etc." Crawford listed ten sales positions for which Heller might be particularly suited.[2]

Additionally, Fortis dispatched its in-house investigator to determine whether Heller was working at her husband's law firm during the time that she was receiving disability benefits. The investigator determined that Heller spent some time at the firm during the workday, and he also found some documents

---

1. McCue purchased the plan from the Mutual Benefit Insurance Company, which was succeeded as the company responsible for administering the plan by Fortis in 1991. For ease of reference, we refer to Heller's insurer throughout as "Fortis."

2. Relying on telephone calls made one year after Crawford completed its survey, Heller disputes the availability of these jobs.

implying that she worked there—for instance, a letter referring to her editing assistance. However, neither Heller's social security and tax records nor the law firms's records provided documentation of such employment or income; nor did she ever notify Fortis of any return to work or receipt of new income.

Finally, Fortis assembled the medical reports on Heller from examinations since the onset of her disability. Three physicians pronounced her fit for certain kinds of employment. In 1987, Dr. Philip Pulaski concluded that he "would have a hard time, at least from the neurologic perspective, continuing to back up her claims of disability." In 1989, Dr. John Devor concluded that "[m]ost of the time, [Heller] probably would not have more than a slight handicap working either as an outside salesperson or an inside salesperson." In 1990, Dr. Louis Levitt concluded: "In my opinion the patient is not totally disabled from gainful employment." In addition, Dr. Raymond Drapkin, Heller's attending physician, who had been of the opinion that Heller had been disabled, agreed on January 23, 1991, in response to a questionnaire sent by Fortis, that Heller was a good candidate for vocational rehabilitation. On September 6, 1991, in response to another questionnaire, Dr. Drapkin further agreed that Heller could be available for "light work duty" and was "OK" for "sedentary work." He answered in the affirmative the question whether she could "possibly return to work on a full-time basis as an inside salesperson where she is not require[d] to travel or lift heavy equipment and where she is allowed to alternate her position when necessary."

Based on its investigation, Fortis concluded that Heller satisfied neither the plan's Occupation Test nor its Earnings Test, and therefore was unqualified to receive benefits. By letter of January 15, 1992, Fortis notified Heller of the termination of her benefits. After outlining the medical information and the information provided by Crawford, the letter stated: "Based on the medical information and the results of the Labor Market Survey, benefits could be denied on these findings alone[;] however we also have information documenting that [Heller] has worked

... since 12/19/88." In addition to terminating her benefits, Fortis demanded repayment of "benefits that were not due." The letter did not advise her of any right to appeal the benefits determination.

Heller sent a number of documents to Fortis, to which Fortis responded both in writing and by telephone conversation with Heller's attorney that it would treat the documents as an appeal of its benefits determination. Nonetheless, two days after receiving this notice from Fortis, Heller filed suit alleging, among other things, violation of ERISA, specifically, 29 U.S.C. § 1132(a)(1)(B), which provides that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (1994). Fortis counterclaimed for restitution of benefits paid Heller after January 1991. The district court resolved the case on cross-motions for summary judgment, ruling in Fortis' favor on both Heller's claim and its counterclaim. The court found that Fortis was entitled to $19,811.00 in restitution, the amount erroneously paid to Heller after her fifth year of receiving benefits.

**II.**

On appeal Heller contends that the district court erred in granting summary judgment against her because Fortis denied her a meaningful review process in violation of 29 U.S.C. § 1133. She also contends that the district court failed to apply either test for "total disability" properly in the context of a motion for summary judgment. Under the Occupation Test, she maintains, the severity of her disability presented a material question of fact. Furthermore, she maintains that the district court could not have concluded that she failed the Earnings Test on the basis of sparse medical evidence and undocumented allegations that she was working at her husband's law firm. Finally, she contends that the district court erred in awarding Fortis restitution. Our review of the grant of summary judgment, as well as the

denial of Heller's own motion for summary judgment, is *de novo. See Henke v. Department of Commerce,* 83. F.3d 1445, 1448 (D.C.Cir.1996); *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994).

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Facts are deemed "material" if a dispute over them "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See id.* at 256, 106 S.Ct. at 2514. If the moving party satisfies this burden, Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED.R.CIV.P. 56(e).

**A.**

■ Because Heller made her disability claim through an insurance plan offered by her employer, this coverage case is governed by ERISA. *See* 29 U.S.C. §§ 1002(1), 1003(a) (1994). Section 503 of ERISA provides that

> every employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

*Id.* § 1133. Initial claims handling must be completed within time limits prescribed by the Secretary of Labor. *See* 29 C.F.R. § 2560.503–1(e) (1997). If a claim is denied, the fiduciary reviewing the denial must act promptly and within time periods prescribed by the Secretary of Labor following any request for review by the plan participant. *See id.* § 2560.503–1(h). The Secretary has fixed that time period in most cases at 120 days:

> A decision by an appropriate named fiduciary shall be made promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the plan procedure provides for a hearing) require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review.

*Id.* § 2560.503–1(h)(1)(i). If the decision is not rendered within the 120–day period, the claim is deemed denied on review, *see id.* § 2560.503–1(h)(4), and the claimant may "bring a civil action to have the merits of his application determined, just as he may bring an action to challenge an outright denial of benefits," *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). Delay in the processing of an application or appeal does not, however, give rise to a private right of action for compensatory or punitive relief. *See id.*

■ The relevant regulations also provide that the notice required by section 1133 includes "appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review." 29 C.F.R. § 2560.503– 1(f)(4). For-

tis never advised Heller of her right to appeal in its denial letter. However, this would not necessarily render summary judgment in favor of Fortis inappropriate given its substantial compliance with section 503 of ERISA and its accompanying regulations. *See, e.g., Brehmer v. Inland Steel Indus. Pension Plan,* 114 F.3d 656, 662 (7th Cir. 1997); *Kent v. United of Omaha Life Ins. Co.,* 96 F.3d 803, 807 (6th Cir.1996). Indeed, "when claim communications as a whole are sufficient to fulfill the purposes of Section 1133 the claim decision will be upheld even if a particular communication does not meet those requirements." *Kent,* 96 F.3d at 807. Here, before Heller filed her lawsuit, she was informed of her right to appeal and that appeal proceedings were being commenced. Fortis advised Heller through her present attorney on February 19, 1993, a month after sending the termination later, that it would treat various documents sent by her as an appeal. Thus, although the initial letter from Fortis informing Heller of the denial of her disability benefits did not conform to the requirements of the regulations, "the procedures, when viewed in light of the myriad communications between claimant, her counsel and the insurer, [appear] sufficient to meet the purposes of Section 1133 in insuring that the claimant understood the reasons for the denial of [her benefits] as well as her rights to review of the decision." *Id.* at 807.

■ In any event, Heller now asserts that even if Fortis had resolved her appeal, the established review process was essentially meaningless because it consisted merely of the claims adjuster's reconsideration of his own work. But we have no occasion to determine whether Fortis' procedural shortcomings violated 29 U.S.C. § 1133 and its attendant regulations, and, if so, what remedy might be appropriate, because Heller never attempted to make use of Fortis' appeal process. While the insurer offered to treat Heller's correspondence as an appeal of its denial of benefits, Heller did not wait to see how the appeal would be resolved. Instead, she filed her lawsuit two days after Fortis' February 19th offer. Not only did she shortcut any review that might have occurred, but she even asserted in her complaint that she had exhausted her administrative remedies.

Under the circumstances, she cannot establish that she was denied "a fair opportunity for review" of her claim because she never gave Fortis a chance to complete its review. *Id.* at 807. Nor can she show that Fortis' processing of her claim denial prejudiced her because she immediately filed suit against the insurer. *See Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1308 (9th Cir.1986). By doing so before exhausting the remedies provided by her insurer, Heller's position now is no different than it would have been if Fortis had neglected to process her correspondence as an appeal. *See* 29 C.F.R. § 2560.503–1(h). In either event, her next move would have been to file suit in the district court. *See Massachusetts Mut. Life Ins. Co.,* 473 U.S. at 144, 105 S.Ct. at 3091.

## B.

■ Under the Occupation Test in Fortis' plan, insureds are considered "totally disabled" (after the first five years of disability) if they are "unable to perform the material duties of any and every gainful occupation or employment for which the person is or becomes reasonably fitted by education, training or experience." Heller contends that there was a genuine issue of material fact whether she was unable to perform the duties of any gainful occupation and whether there were any job opportunities for which she was reasonably fitted.

■ Heller's examining and treating physicians agreed, however, that she was able to work in 1992, and she presented no evidence to contravene the Crawford report that jobs were available to her. "Courts review ERISA-plan benefit decisions on the evidence presented to the plan administrators, not on a record later made in another forum," *Block v. Pitney Bowes Inc.,* 952 F.2d 1450, 1455 (D.C.Cir.1992), and all the evidence available to Fortis when it made its claim decision suggested that Heller was able to work as a medical matter, at least in a sedentary occupation. Not only had three outside medical examiners concluded that she was not disabled, but her own attending physician, Dr. Drapkin, also advised Fortis that

Heller was ready for "light work duty" and "sedentary work." Because Dr. Drapkin's January 15, 1997, declaration that he had always thought his patient was disabled, regardless of his earlier conclusions as to her suitability for sedentary work, was unavailable to Fortis before it denied Heller's claim for further benefits on January 15, 1992, that declaration may not be considered now. *See id.* Hence, there is no genuine factual dispute about the medical conclusions available to Fortis at the time it terminated Heller's benefits. Those medical conclusions unanimously indicated that Heller was capable of some work.

◼ Nor was there a genuine question of material fact as to the availability of employment for which Heller would have been "reasonably fitted by education, training or experience," as required by the plan. Heller was confronted with Crawford's vocational assessment indicating that she was a good candidate for employment in inside sales because she had transferrable skills, a college education, and job experience. Heller presented Fortis with nothing to challenge that assessment other than speculation that it would be difficult at her age for her "realistically" to get one of the inside sales jobs, and that the jobs might pay minimum wage. Her evidence that none of the several jobs listed by Crawford were still available one year later did not undermine Crawford's assessment; certainly it did not indicate that similar jobs were unavailable. Therefore, although "the burden of proof is upon the insured as to questions of coverage and disability," 20 JOHN ALAN APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 11376 (1980) (footnote omitted) (citing cases); *cf. Perdue v. Burger King Corp.,* 7 F.3d 1251, 1254 n. 9 (5th Cir.1993), Heller did not provide Fortis with evidence suggesting that she had "an impairment which would prevent [her] from performing some identifiable job," *See McKenzie v. General Tele-*

*phone Co.,* 41 F.3d 1310, 1317 (9th Cir.1994). Heller did not present any evidence to Fortis sufficient to establish her right to benefits under the company's Occupation Test.

◼ Nor can Heller prevail under the alternative Earnings Test. Under that test, an insured who "is not able, because of Injury, sickness or pregnancy, to earn more than 50% of his or her Monthly Earnings" before going on disability is entitled to benefits. The most important part of this definition for Heller is the phrase "able ... to earn." Crawford's analysis of Heller's employment prospects concluded that she was qualified for a number of available inside sales jobs, and listed a number of examples paying base salaries between $20,000 to $35,000 per year. The wages from these jobs exceeded 50% of the roughly $35,000 that Heller made when she was working for McCue prior to her disability.[3] Again, Heller has presented no evidence to show that she could not find a job that would pay at least 50% of the salary she earned at McCue, despite her obligation to do so. *See* FED.R.CIV.P. 56(e).

For these reasons, the district court properly concluded that the medical and occupational evidence before Fortis at the time of its decision to terminate benefits was sufficient to support that decision. Because Heller has presented no contradictory evidence, we need not reach other disputed but nonmaterial issues of fact, such as whether Heller actually was working for her husband's law firm, in order to affirm the grant of summary judgment.

### III.

◼ This circuit has not previously decided whether there is a cause of action for restitution under ERISA. Fortis filed its counterclaim for restitution pursuant to ERISA's provision that "[a] civil action may be brought ... by a ... fiduciary (A) to enjoin any act or practice which violates any

---

3. Indeed, under Fortis' interpretation of its Occupation Test, a "gainful" occupation is an occupation that pays at least the amount of the gross monthly long-term disability benefit that the claimant receives from Fortis—in Heller's case, $1801 per month. Thus, when it denied Heller's claim under that test, Fortis necessarily found that Heller could earn at least $1801 per month, which is more than one half of Heller's average monthly salary at McCue and thus sufficient to satisfy the Earnings Test. As noted, Heller has not presented evidence sufficient to sustain a claim against Fortis' application of its Occupation Test.

provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief ... to redress such violation." 29 U.S.C. § 1132(a)(3). As the Third Circuit concluded in *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176 (3d Cir.1991), "[a]lthough ERISA itself does not explicitly provide a statutory right of restitution, it is clear that Congress intended federal courts to fashion a federal common-law under ERISA, and this permits application of a federal common-law doctrine of unjust enrichment." *Id.* at 1186. A number of courts have created an unjust enrichment remedy, permitting ERISA fiduciaries such as Fortis to seek restitution against third parties who wrongly or mistakenly receive money to which the plan is entitled. *See, e.g., Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1548–49 (11th Cir. 1990); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 994 (4th Cir.1990). *But see NYSA–ILA GAI Fund v. Poggi*, 617 F.Supp. 847, 849 (S.D.N.Y.1985). As the district court correctly concluded, this furthers the goal of ERISA to safeguard "the corpus of funds set aside" under the plan.[4] *Luby*, 944 F.2d at 1186; *see also Printing Industry of Ill. Employee Benefit Trust v. Stout*, 157 F.R.D. 448, 451 (N.D.Ill.1994) ("[D]enial of a federal cause of action would ultimately undermine ERISA's goal of expanding pension and welfare benefit plan coverage."). Accordingly, we hold that Fortis could properly seek restitution under ERISA.

The question remains whether the district court properly granted Fortis restitution. Here, the scope of our review is more limited than with regard to whether restitution was a possible remedy; we only review awards of restitution for abuse of discretion. *See United States v. Rezaq*, 134 F.3d 1121, 1141 (D.C.Cir.1998). Generally, restitution is an appropriate remedy where there is unjust enrichment:

> three elements encompass the equitable remedy of unjust enrichment and quasi-contract: the plaintiff must show that (1)

he had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment.

*Waller*, 906 F.2d at 993–94 (citing COLIN KELLY KAUFMAN, CORBIN ON CONTRACTS § 19A, at 50 (Supp.1989)). Heller contends that the restitution ordered by the district court was unfair essentially because she had not been notified that the company would seek restitution until it terminated her payments. Her plan did not specifically provide for restitution and Fortis never expressly stated that its payment of the benefits after the five year term expired was conditional. Yet the district court was presented with evidence that Fortis had previously notified Heller in writing that its payment of benefits after the first five years could not be deemed an admission of liability. Reasonably viewed, Fortis thereby notified Heller that it expected reimbursement for benefits for which she was not eligible. It is true that the plan did not expressly provide for restitution, but nothing in the plan prohibited such recovery by Fortis. While it might well be preferable for the plan to be explicit on the point, notice by letter may well afford more effective notice than a provision buried in a lengthy policy statement. The district court, therefore, did not abuse its discretion in ordering restitution in such circumstances.

Accordingly, we affirm the judgment.

---

**4.** While *Luby* itself is different from the instant case to the extent that it involved a mistaken payment to a nonbeneficiary instead of a disputed payment to a beneficiary, the principle remains the same. In both cases the recipient of the money receives benefits to which she is not entitled, a cost unfairly borne by the other members of the plan. *See Weitz*, 913 F.2d at 1548.