**Juanita WHITE, Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY and Aetna U.S. Healthcare, Appellees.**

**No. 99–7169.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 20, 2000.

Decided May 12, 2000.

David R. Levinson argued the cause and filed the briefs for appellant.

Anthony W. Kraus argued the cause and filed the brief for appellees.

Before: SENTELLE, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Suffering from severe arthritis and unable to perform her job as a nurse, appellant applied for long-term disability benefits pursuant to a plan funded and administered by appellee Aetna Life Insurance Company. Through a computer-generated form letter, Aetna informed appellant that it had denied her claim because of a "lack of sufficient clinical information." The denial notice also informed appellant that she had to submit any appeal to Aetna within sixty days, but appellant's attorney filed her appeal three months late. Citing this untimeliness, Aetna refused to consider the appeal and reaffirmed its denial of long-term disability benefits. Because we find that Aetna violated the Employee Retirement Income Security Act and its implementing

regulations by failing to inform appellant of an important reason for denying her claim, its denial notice did not trigger the sixty-day appeal deadline. We therefore reverse the district court's grant of summary judgment for Aetna and remand with instructions to direct Aetna to consider the merits of appellant's appeal.

## I

The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461, prescribes requirements for the notice that insurers must give claimants when denying their claims:

> [E]very employee benefit plan shall—
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

*Id.* § 1133. Department of Labor regulations elaborate on the information that insurance companies must provide:

> [The insurance company] shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
>
> (1) The specific reason or reasons for the denial;
>
> (2) Specific reference to pertinent plan provisions on which the denial is based;
>
> (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
>
> (4) Appropriate information as to the steps to be taken if the participant or

beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f).

■■■ Along with our sister circuits, we have adopted the "substantial compliance" test to determine whether denial notices comply with section 1133 and the regulation. *See Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 493 (D.C.Cir.1998). Technical noncompliance will be excused as long as the notice substantially complies with the statute and regulation. *See id.* In assessing whether a notice substantially complies, we consider not just the notice itself, but all communications between the insurance company and the claimant. *See id.* Courts make the substantial compliance determination on a case-by-case basis, assessing the information provided by the insurer in the context of the beneficiary's claim. *See, e.g., Kinkead v. Southwestern Bell Corp.*, 111 F.3d 67, 69 (8th Cir.1997); *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 382 (7th Cir.1994). *Heller* is typical:

> [A]lthough the initial letter from [the insurer] informing [the claimant] of the denial of her disability benefits did not conform to the requirements of the regulations, "the procedures, when viewed in light of the myriad communications between claimant, her counsel and the insurer, [appear] sufficient to meet the purposes of Section 1133 in insuring that the claimant understood the reasons for the denial of [her benefits] as well as her right to review of the decision."

142 F.3d at 493 (quoting *Kent v. United Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir.1996)).

With this background in mind, we turn to the facts of this case. A registered nurse, appellant Juanita White worked for the Washington Hospital Center for twenty-two years. Severe pain in the right hip and knees caused by worsening arthritis forced her to stop working in June 1996.

White applied for short-term disability benefits under Washington Hospital Cen-

ter's Group Benefits Plan. Funded by the hospital center, the short-term disability plan was administered by appellee Aetna Life Insurance Company. Aetna certified White as disabled, and White received short-term disability benefits through December 1996.

Aetna based its short-term disability certification on a report by a physician in the office of Dr. C. Anderson Engh, an orthopedic surgeon. According to that report, a physical examination of White conducted in August 1996 indicated end-stage degenerative osteoarthritis of the right hip and knees. The examining physician concluded that White was "unable to do a job that required standing at this time" and recommended hip replacement surgery.

Informed in December 1996 that her short-term disability benefits would run out at the end of the month, White applied for long-term benefits under a Washington Hospital Center plan both administered and funded by Aetna. White submitted a leave of absence certificate from Dr. Engh in support of her application. In a section of the form titled "Serious Health Condition," Dr. Engh checked "chronic condition requiring treatments." In a handwritten comment, he described his diagnosis as "osteoarthritis," adding that White would require hip replacement surgery. In a section titled "Work Schedule," Dr. Engh checked "Intermittent/Reduced Schedule."

On January 8, 1997, Aetna claims representative Donna Hucks informed White that her claim had been denied. According to White, Hucks gave three reasons for the denial: Hucks "had not been able to contact White's orthopedic surgeon over a three day period, [ ] White's internist had refused to confirm that White was disabled to work, and [ ] White should have already undergone hip replacement surgery." White asked Hucks for written confirmation of the denial, but received none.

By letter dated February 26, 1997, White's attorney advised Aetna that the hip replacement surgery was scheduled for April 1 and asked that her claim be recon-

sidered. The attorney attached two documents: a copy of Dr. Engh's certificate and the more detailed report that Dr. Engh's office had prepared in August.

Aetna sent White a written denial dated March 13, 1997. A computer-generated form, the denial stated: "Your request for an extension of your period of disability has been reviewed by an Aetna medical director. Due to the lack of sufficient clinical information to support your request, your period of disability could not be recertified." The back of the form described the procedure for appealing the denial:

> You are entitled to a review of this Certification Decision if you do not agree. To obtain a review, you or your representative should submit a written request. Your written request should include the Sponsor (e.g., Employer), your name, Social Security Number and other identifying information shown on the front of this notice, and the issue, comments or additional medical information you would like to have considered. You may also ask for copies of documents pertinent to your request.

> The written request must contain the information described above and must be mailed for delivery within 60 days following receipt of this notice.

At about the same time Aetna sent the notice, Hucks called White's attorney to advise him of the written denial. She explained that one of the reasons for the denial was the lapse in time between the August physical examination and the April surgery. The attorney asked her to send him a copy of the notice, but she refused. White recalls receiving the notice and forwarding a copy to the attorney before her April 1 surgery. The attorney recalls receiving the notice in early May, attributing the delay to the fact that he had moved his office.

Almost three months after the sixty-day appeal deadline, White's attorney formally appealed the denial of benefits in a letter

addressed to Hucks dated August 12, 1997. The letter stated: "I apologize for my delay in providing this material, but Aetna's failure to send a copy of its last determination to me caused a significant delay to my handling of this matter." As to the merits of White's claim, the letter explained: "You had advised me in a telephone conversation that you were concerned about the lapse of time between Dr. Engh's August 28, 1996 exam leading to his recommendation for hip surgery and the actual surgery on April 1, 1997. I asked Dr. Costecu [White's internist] to address the medical reasons for the timing of the operation." Attached was a letter from Dr. Costecu explaining that White's "blood pressure was not sufficiently under control to clear her for surgery" before April. Dr. Costecu added that in her opinion, White was disabled. Also attached was an updated medical report from Dr. Engh: "The severity of her arthritis is such that she is completely disabled and unable to perform her normal work. I do not feel that she will be at any point in the future ever able to perform her work as an RN on a Geriatric Inpatient Ward of an acute care hospital." Aetna denied White's request for review, explaining that "the request is well beyond the 60 day appeal period."

White filed suit in the United States District Court for the District of Columbia, challenging Aetna's refusal to consider her appeal and claiming that Aetna's initial denial notice failed to comply substantially with ERISA and its regulations. Granting summary judgment for Aetna, the district court found that Aetna's March 13 denial notice, together with Hucks' oral communications with White and her attorney, substantially complied with ERISA and its regulations. *White v. Aetna Life Ins. Co.*, No. 97–2676, Mem. Op. (D.D.C. Aug. 10, 1999). The district court thus found no basis for excusing White's late appeal. We review the district court's order *de novo*. *See, e.g., Cones v. Shalala*, 199 F.3d 512, 516 (D.C.Cir.2000).

## II

██ If this case turned on whether White's lawyer had a legitimate reason for failing to file the appeal on time, Aetna would win easily. The lawyer blames the delay on Hucks for failing to send him a copy of the March 13 denial notice (the regulations do not require her to have done so), on Aetna for sending the notice to White just before she went into the hospital, and on the post office for forwarding the notice too slowly. Yet notwithstanding these problems, the record shows that Hucks told the lawyer that she was sending the notice to White and that White forwarded it to him before her surgery. The lawyer, moreover, never claims that he did not receive the notice until after the appeal deadline. Instead, he tells us that he would have filed earlier than August 12 if only Aetna had given more specific reasons for denying the claim. Perhaps. But nothing prevented the lawyer from either filing a cautionary notice of appeal or seeking an extension of time from Aetna.

From these facts, we can draw but one conclusion: the attorney failed to perform a primary obligation to his client—filing a timely notice of appeal. Fortunately for White, this case is not so simple. If Aetna's March 13 denial notice, supplemented by Hucks' conversations with White and the lawyer, failed to comply substantially with section 1133 and its implementing regulations, then the sixty-day appeal period would not have begun to run, and the lawyer's failure to file a timely appeal could not have served as a legitimate basis for Aetna's refusal to consider the claim. *See Counts v. American General Life and Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir.1997) ("The consequence of an inadequate benefits termination letter is that the normal time limits for administrative appeal may not be enforced against the claimant."). We therefore turn to the question of Aetna's substantial compliance.

■ The March 13 notice and Hucks' various conversations with White and the attorney identified three reasons for denying White's claim: Hucks could not reach Dr. Engh (January 8 phone call with White); White failed to provide "sufficient clinical information" (March 13 denial notice); and White had offered no reason for the lapse in time between the August 1996 examination and the April 1997 surgery (January 8 phone call with White and March phone call with White's attorney). White's complaint alleges that Hucks gave a fourth reason: that Dr. Costecu, White's internist, declined to certify her as disabled. But because Aetna's answer denies that particular allegation and because neither party presses it here, we need not consider it.

■ Aetna claims that the three reasons given in the March 13 notice and in Hucks' various conversations satisfied its obligation to provide "[t]he specific reason or reasons for the denial." 29 C.F.R. § 2560.503–1(f)(1). White argues that we can only consider the particular reason that Aetna communicated in writing—that she failed to provide "sufficient clinical information"—but *Heller* holds that oral communications must also be considered in determining substantial compliance. *Heller*, 142 F.3d at 493.

Had the three reasons been the only basis for denying White's claim, we think Aetna probably would have substantially complied with both ERISA and the underlying regulation. Even if, as White argues, "lack of sufficient clinical information" is too general to be considered "specific" within the meaning of the statute, the third reason—the lapse of time between diagnosis and surgery—is not only specific, but according to Aetna's brief the primary reason for having denied the claim. To be sure, Aetna failed to provide a "[s]pecific reference to pertinent plan provisions on which the denial is based," as required by subparagraph two of the regulation, and "[a] description of any additional material or information

necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary," as required by subparagraph three. 29 C.F.R. § 2560.503–1(f)(2), (3). But where, as here, the reason for denial has no connection to any particular plan provision, failure to reference a specific provision seems just the type of technical noncompliance that the substantial compliance test excuses. While failure to describe additional material needed to perfect the claim might otherwise have represented a significant omission, in this case Aetna's stated reason for denial made clear precisely the information White needed to provide: an explanation of the delay between the August examination and the April surgery. We thus think that were this the entire story, Aetna's communications would have substantially complied with ERISA and the regulation. The communications were " 'sufficient to meet the purposes of Section 1133 in insuring that the claimant understood the reasons for the denial of [her benefits].' " *Heller*, 142 F.3d at 493 (quoting *Kent*, 96 F.3d at 807).

There is more to this case, however. In addition to the three reasons mentioned in the March 13 denial notice and Hucks' phone calls, the record reveals that Aetna's denial rested on a fourth reason. Aetna's statement of material facts as to which there is no genuine issue says this: "Aetna's concern was compounded by the fact . . . that Dr. Engh had refused to certify White as disabled. . . ." Scouring the record, we can find no evidence that Aetna ever communicated this reason to either White or her lawyer. At oral argument, Aetna's counsel conceded that he too knew of no such evidence.

Aetna argues that, even given its failure to communicate its fourth reason, its notice and Hucks' communications with White and her lawyer substantially complied with the regulations. We disagree. Not telling White that her claim had been denied in part because Dr. Engh had failed to certify

her as disabled amounts to a major omission. Based on the information Aetna conveyed through the March 13 notice and Hucks' phone calls, neither White nor her attorney had any way of knowing that to perfect the claim, White needed to get Dr. Engh to certify her as disabled. Indeed, Aetna's counsel conceded at oral argument that even if White had submitted documentation responding to Aetna's stated reasons for denying her claim, Aetna likely would not have approved the claim absent a disability certification by Dr. Engh. Put simply, Aetna failed to give White a "specific reason" for denying her claim and failed to tell her the "additional material or information necessary ... to perfect the claim," hardly substantial compliance with the statute and regulation. 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503–1(f)(1), (3).

Urging yet another justification for its refusal to consider White's claim, Aetna argues that White failed to show that she was prejudiced by the notice's deficiencies, *i.e.,* that the deficiencies caused her to file an untimely appeal. Aetna wants not just one, but two escape hatches from ERISA's requirements: one for insubstantial omissions and another for omissions that are not prejudicial. We think one is enough.

To begin with, we are not at all sure how Aetna's prejudice defense can be reconciled with *Heller.* Indeed, under Aetna's theory, we would have no need at all for a substantial compliance test because no deficiency—substantial or otherwise— would relieve a claimant of the obligation to appeal within sixty days unless the deficiency actually caused the claimant to miss the deadline. The following notice would probably be acceptable: "Please be advised that your claim for disability benefits is denied. You have sixty days to appeal." Insurers would not have to include any specific reason for the rejection (subparagraph one of the regulation), nor give citations to relevant plan provisions (subparagraph two), nor describe additional information needed to perfect the claim

(subparagraph three). As we understand Aetna's argument, as long as the notice describes how and when to appeal (subparagraph four), the absence of other information required by the regulation likely would not prejudice a claimant's ability to file a timely appeal. No doubt this would have been one way to run a claims procedure. But Congress and the Labor Department chose a different procedure, one that requires insurance companies to give claimants specific reasons for denying benefits, to cite relevant plan provisions, to specify additional information needed, and to describe how to appeal. *Heller,* moreover, requires substantial compliance with these obligations.

The cases Aetna relies on to support its prejudice test, *see, e.g., Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 238 (4th Cir.1997); *Recupero v. New England Tel. and Tel. Co.,* 118 F.3d 820, 840 (1st Cir. 1997), differ from this case in a critical respect. All involved challenges to initial denial notices where insurers thereafter had evaluated claimants' appeals on the merits; here Aetna failed even to consider the merits of White's appeal. Where claimants receive "a full and fair review ... of the decision denying the claim," 29 U.S.C. § 1133(2), perhaps it does make sense to require them to show that they were in fact prejudiced by deficiencies in the initial denial notice before restarting the review process. Otherwise, as the Sixth Circuit pointed out, "remand ... would represent a useless formality." *Kent,* 96 F.3d at 807. Not so here. White's claim may well have merit: both Dr. Engh and White's internist found her to be totally disabled. Under these circumstances, remand would hardly be a useless formality.

Aetna's remaining arguments require little discussion. Citing *Kinkead v. Southwestern Bell Corp.,* 111 F.3d 67 (8th Cir. 1997), Aetna claims that an initial denial notice "need only state a general reason for the claim denial and explain the procedure for appeal to trigger the require-

ments of proper exhaustion of the appeals process"; only final denial notices, Aetna argues, need be specific. Aetna's reliance on *Kinkead* is misplaced. *Kinkead* considered whether a notice informing the claimant that "medical evidence does not substantiate you were disabled" satisfied the insurance company's obligation under the regulation to provide the "specific reason." *Id.* at 69. In this case, Aetna failed entirely to communicate to White an important reason for denying her claim. So even if correct, *Kinkead* has nothing at all to do with this case.

Aetna argues that failure to communicate an important reason for denying a claim has no consequence beyond estopping the insurer from relying on that reason in considering a claimant's appeal. Because Aetna did not raise this claim until oral argument, however, we need not address it. *See, e.g., Galvan v. Federal Prison Industries, Inc.,* 199 F.3d 461, 468 (D.C.Cir.1999).

█ We conclude with a final observation. As this case well demonstrates, although insurance companies are protected by *Heller's* substantial compliance test, they could avoid expensive litigation for themselves and claimants and conserve judicial resources by strictly complying with the Labor Department's regulations. In view of *Heller* and the decision we reach today, it would be in the best interest of all concerned for insurers to disclose *in writing* all information required by the regulations.

### III

For all of these reasons, Aetna's March 13 notice, together with Hucks' conversations with both White and her attorney, did not substantially comply with ERISA and its regulations. Because the sixty-day appeal deadline thus never began to run, we reverse the district court's grant of summary judgment and remand with instructions to direct Aetna to consider the merits of White's appeal.

*So ordered.*