Marvin R. LANE

v.

DIRECTOR OF EMPLOYEE BENEFITS, GANNETT COMPANY, INC.

No. CIV.A. 01–CV–11365–R.

United States District Court, D. Massachusetts.

March 24, 2003.

James E. Grumbach, Rothenberg, Estner, Orsi, Arone & Grumbach, LLP, Wellesley, MA, for Marvin R. Lane, Plaintiff.

Margaret A. Clemens, Nixon Peabody, Rochester, NY, Robert M. Shea, Nixon Peabody, LLP, Boston, MA, for Gannett Company, Defendant.

## MEMORANDUM AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR RELIEF FROM OR-DER

STEARNS, District Judge.

On July 10, 2001, Marvin Lane brought suit in the Superior Court against the Director of Employee Benefits (Director) of his former employer, Gannett Company, Inc. (Gannett). The Complaint objected to the September 28, 1999 decision of The Prudential Insurance Company of America (Prudential) to terminate Lane's long term disability (LTD) benefits under Gannett's LTD Plan (Plan). Gannett removed the case to the federal district court. *See* 29 U.S.C. § 1144(a) (the Employee Retirement Income Security Act of 1974 [ERISA] preempts any and all state claims related to an employee benefit plan). The district court thereafter referred the case to Magistrate Judge Dien for a recommendation as to the appropriate standard of review.

On July 11, 2002, the Magistrate Judge, having restyled Lane's motion urging the adoption of a *de novo* standard of review as a motion for judgment on the pleadings, issued a Report recommending that Lane's claim be remanded to Gannett's Director for a review of Prudential's termination decision. On July 25, 2002, Gannett filed an objection to the Report. By an Order dated August 2, 2002, this court reversed the Magistrate Judge, finding that the Plan authorized the Director to delegate the entire administration of the Plan to a third party insurer, in this case Prudential. Gannett, in the person of the Director, therefore had no independent obligation to conduct a review of Prudential's termination decision.[1] The court further held that

> [g]iven that the language of the Plan grants the Plan Administrator, or its designee, broad discretion in "constru[ing] and interpret[ing] the terms of the Plan," the decision to deny LTD benefits is to be reviewed for an abuse of discretion (reasonableness) based on the record before the ERISA decision maker.

---

1. Under the Administration section of the Plan

> [t]he named fiduciary and plan administrator of the Plan is the Director, Employee Benefits of the Company. The named fiduciary possesses the authority ... to delegate and allocate responsibilities for the operation and administration of the Plan to others. It is expected that the plan administrator will delegate the claims administration of the Plan to an insurance company or similar organization with expertise in such matters, and in such event the plan administrator will notify the employees by means of the summary plan description or otherwise of the delegate [sic] and of the necessary procedures for claiming benefits.

August 2, 2002 Order, at 3. Gannett has now moved for summary judgment. Lane seeks partial summary judgment as well as additional discovery and the consideration of material extraneous to the administrative record. Lane also seeks relief from the court's August 2, 2002 Order, by asking that the court reverse itself and adopt the Magistrate Judge's recommendation.

## BACKGROUND

The bulk of the material facts are not in dispute. Lane was employed at Gannett as a prepress prep stripper, a job that involved heavy exertion. On May 14, 1994, he exacerbated a June 1993 back injury while lifting 75 pound press plates. Diagnosed with a herniated disc at L5–S1, Lane ceased work on June 9, 1994, and on December 9, 1994, began receiving LTD benefits. Under the Plan, disabled employees are eligible to receive benefits commencing twenty-six weeks after they become disabled. Disability is defined as

> any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than six months. Such condition must render the person unable to perform the work previously done immediately prior to the disability for two years and unable thereafter, considering age, education, and work experience, to engage in any other kind of substantial employment.

Lane's initial eligibility for LTD benefits was thus based on his inability to perform the job of a prepress prep stripper. After the expiration of the two year period of guaranteed benefits, Lane's continuing eligibility was conditioned upon his inability

to pursue any other kind of suitable employment.

On July 10, 1996, Prudential wrote to Lane notifying him that as of December 9, 1996, he would come under the Plan's more restrictive disability conditions. Prudential also requested more recent medical information. On October 10, 1996, Prudential determined that Lane continued to meet the total disability criteria, and extended his LTD benefits to December 31, 1997. Periodically thereafter, similar extensions were granted.

On April 7, 1999, Lane's personal physician (Dr. David August), filled out a statement for Prudential indicating that he believed that Lane was fit to resume sedentary employment and that he had so informed Lane. After Prudential requested further information from Dr. August, he completed a questionnaire (in August of 1999) indicating that Lane was not limited in his ability to sit in a chair or to stand and walk, and that while lifting caused him pain, he was not impaired in his ability to drive or engage in the usual activities of daily living. On September 28, 1999, Prudential notified Lane that, based upon his education[2] and the medical information provided by Dr. August and others, it had determined that he was "capable of returning to work performing non-manual labor," and that his benefits therefore would be terminated as of November 1, 1999. Prudential offered Lane thirty days of job placement services. Lane was also notified of his right to appeal the decision within sixty days.

Lane, with the assistance of counsel, duly appealed.[3] Lane informed Prudential that he was

---

2. Lane is a high school graduate with two years of college. He has also earned a certificate in graphic art.

3. The claims review procedure established by Prudential contains three levels of review. Upon receipt of the initial appeal, an Appeals Review Unit conducts a review of the claim-

in continuous pain in my back and legs which make it very hard to sit, walk, lift, bend or do anything without serious pain. . . . I am in a depression state and am see[ing] a psychiatrist on a weekly visit to help with the depression. I am unable to work and to have my benefits stop it is hard to maintain a regular life style.

With the letter, Lane submitted records from some of his medical providers. These included an office note prepared by Dr. Rachelle Hotz on March 7, 2000; medical notes and a letter from Dr. Jacob Rachlin dated January 6 and 13, 2000; ambulatory care records from Lemuel Shattuck Hospital dated December 29, 1999, January 24 and 27, 2000, and February 1, 2000; emergency room records from Beth Israel Hospital dated December 15, 1999; a medical note from Dr. August dated January 11, 2000, and a letter that Dr. August had written on March 1, 2000. While Dr. Rachlin had repeatedly recommended that Lane undergo back surgery, a recommendation that Lane had resisted, Dr. August, in his January 11, 2000 note, had observed that "Mr. Lane at this time, for the first time, feels his symptoms are severe enough that he would be open to this treatment." In the March 1, 2000 letter, Dr. August remarked that

> [a]t this point in time, Mr. Lane cannot do the bending, lifting, and other physical maneuvers that were an integral part of his previous employment, and is

therefore disabled in that regard. I am impressed that Mr. Lane is pursuing treatment, both for his back and for psychiatric issues in a more directed way than in the past and I am hopeful that he will come through this difficult period.

The remaining records focused on Lane's back problems and his recurring depression.

On June 12, 2000, Prudential denied Lane's appeal. In so doing, Prudential explained that, on April 6, 2000, it had contacted Dr. August for clarification of his March 1, 2000 letter questioning Lane's ability to return to his prior job. According to Prudential, Dr. August had repeated his earlier opinion that Lane was capable of returning to work in a sedentary or light duty occupation.[4] Prudential also cited Dr. Rachlin's [5] January 13, 2000 assessment that Lane's reported symptoms appeared exaggerated given the nature of the disk lesion revealed by his MRI, as well as the advice that he had given to Lane to either undergo surgery or learn to accept his symptoms. Prudential noted the opinion of another of Lane's physicians, Dr. James Rainville, who saw Lane on October 15, 1999, and again on November 15, 1999, that Lane demonstrated "profound and inappropriate pain behaviors and that his impairment of trunk flexibility is inappropriate with disc degeneration changes." Finally, Prudential pointed out that any manifestations of depression

---

ant's file and any new information submitted by the appellant. A Management Team member ultimately decides the appeal. At the second level of appeal, a similar review is conducted, but the determination of the appeal is made by a Senior Management Team member. At the third level, the appeal is directed to an Appeals Committee composed of three members of the Management Team who were not involved in the previous appeals. The decision of the Appeals Committee is final.

4. Lane moves to strike this evidence as inadmissible. *See* Motion to Strike Portions of Affidavit of Margaret Clemens, Esquire, at ¶ 8. The motion will be *DENIED.* Lane has offered no evidence (such as a sworn denial by Dr. August) suggesting that the report of Dr. August's oral statements, although hearsay, was unreliable.

5. Dr. Rachlin was Lane's back doctor.

began two months after Lane's benefits were terminated and did not appear related to his work injury. Prudential advised Lane of his option of a further appeal.

Lane initiated a second appeal by letter dated August 2, 2000. Lane claimed that because of his chronic back pain, there was "no way that I can do light sedentary work." Lane did not submit any additional medical records. Relying on the existing file, Prudential denied Lane's second appeal.

On November 20, 2000, having obtained new counsel, Lane appealed Prudential's denial of his second appeal. With this third appeal, Lane submitted a letter from a Dr. Douglas Dolgov stating that Lane has "clear chronic low back pain syndrome, with depression and pain behaviors.... The patient's quality of life at this time is extremely poor and ... surgery must be seriously considered."

On June 13, 2001, Prudential made its final decision to terminate Lane's LTD benefits. Prudential stated that "there [was] insufficient documentation of a functional impairment in October, 1999, that would have precluded [Lane] from performing the duties of a sedentary occupation ...." Prudential cited the previously discussed portions of Lane's medical records in support of its decision. "We understand that Mr. Lane had back surgery in April, 2001, however, he was no longer covered under the Group Plan, referenced above, as of November, 1999, when we determined that he was not eligible for LTD benefits."

## DISCUSSION

Gannett seeks by way of summary judgment an affirmation that Prudential's September 1999 decision to terminate Lane's LTD benefits was not arbitrary and capricious. Lane argues that the medical records support his claim that he is totally disabled by degenerative back pain.

] An ERISA beneficiary aggrieved by a benefits decision may bring a federal civil action to recover benefits due, to enforce rights under a plan, or to clarify rights to future benefits. 29 U.S.C. § 1132(a)(1)(B). While the default standard for review of a benefits decision in the district court is *de novo,* when plan administrators are given discretionary authority to determine benefits eligibility or to construe the terms of a plan, an arbitrary and capricious standard of review will be applied. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Brigham v. Sun Life of Canada,* 317 F.3d 72, 80 (1st Cir.2003); *Recupero v. New England Tel. & Tel. Co.,* 118 F.3d 820, 827 (1st Cir.1997). Gannett's Plan vests in the Director "the authority to control and manage the operation of the Plan, [and] to construe and interpret the terms of the Plan ...." Given this clear delegation of discretion, the court (as it has previously ruled) is obligated to apply the arbitrary and capricious standard of review.

 Under the arbitrary and capricious standard, the plan administrator's decision will be upheld if it is within his authority, reasoned, and supported by substantial evidence in the record. *Associated Fisheries of Maine, Inc. v. Daley,* 127 F.3d 104, 109 (1st Cir.1997). Stated another way, the reasonableness of the administrator's decision determines whether or not he abused his discretion. *Doe v. Travelers Ins. Co.,* 167 F.3d 53, 57–58 (1st Cir.1999). Under the arbitrary and capricious standard "a court is not to substitute its judgment for that of the [decision-maker]." *Terry v. Bayer,* 145 F.3d 28, 40 (1st Cir.1998), quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d

443 (1983). Moreover, the court is to limit its review to the record that was before the plan administrator. *See, e.g., Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 48 n. 8 (3d Cir.1993).[6] This is to "ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators." *Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 641–642 (8th Cir.1997).

 At the January 15, 2003 oral argument, the parties, while disagreeing over the standard of review to be applied, agreed that the ultimate issue, accurately framed, is whether Lane was unable to perform any kind of gainful employment based upon his education, training and experience as of the date of the benefits termination decision (September 28, 1999). Lane maintains that there was insufficient medical evidence to support Prudential's determination that he was not totally disabled, or to the extent that the evidence was ambiguous, Prudential should not have acted without first seeking an independent medical or functional capacity examination. I simply do not agree. Dr. August, Lane's primary treating physician, twice in writing, and on further inquiry by Prudential, in an oral declaration, confirmed that while Lane was not capable of returning to his job as a prepress prep stripper, he was able to perform sedentary work, and would derive therapeutic benefits from doing so.[7] Moreover, Prudential was presented with the opinions of two other of Lane's physicians, Dr. Rachlin and Dr. Rainville, strongly suggesting that Lane was malingering. Prudential could have opted for an independent medical examination as part of its investigation, but given the medical evidence supplied by Lane's own physicians, it was under no obligation to do so.[8]

 Lane also complains that Prudential failed to give sufficient weight to evidence that his condition continued to deteriorate while his case was wending its way through Prudential's appeal process. In this regard, Lane points to a letter from Dr. August dated January 11, 2000, stating that Lane's most recent MRI showed significant abnormalities and that "in light of Lane's ... unsuccessful attempts to get his symptoms under control, he is disabled." Prudential did, however, investigate this statement further by contacting

---

6. As best as I can determine, this is the view of all of the circuits that have pronounced on the issue. *See Alford v. DCH Long–Term Disability Plan,* 311 F.3d 955, 959 (9th Cir.2002); *Gallagher v. Reliance Standard Life Ins. Co.,* 305 F.3d 264, 276 (4th Cir.2002); *Hall v. Unum Life Ins. Co. of America,* 300 F.3d 1197, 1200–1206 (10th Cir.2002); *Zervos v. Verizon New York, Inc.,* 277 F.3d 635, 646 (2d Cir. 2002); *DuMond v. Centex Corp.,* 172 F.3d 618, 621 (8th Cir.1999); *Meditrust Financial Services Corp. v. Sterling Chemicals, Inc.,* 168 F.3d 211, 215 (5th Cir.1999); *Heller v. Fortis Benefits Ins. Co.,* 142 F.3d 487, 493–494 (D.C.Cir.1998); *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991). While the First Circuit has yet to take a definitive position, *see Recupero,* 118 F.3d at 830, I can think of no good reason why it would depart from the overwhelming weight of authority.

7. Lane points to Dr. August's so-called "recantation" letter of February 18, 2002, as calling into doubt Dr. August's contemporary opinions that Lane was not totally disabled. Putting aside any credibility concerns about the letter arising from its *post litem motam* nature, it was not part of the record before Prudential.

8. Lane also faults Prudential for failing to investigate whether he was disabled from working because of depression. As Prudential pointed out, however, in denying Lane's appeal, the medical evidence strongly suggested that the onset of Lane's depression occurred after the benefits termination decision was made and appeared to have been related to that decision rather than to any of Lane's preexisting medical conditions.

Dr. August directly on April 6, 2000, to ask if there had been a change in Dr. August's opinion that Lane was capable of performing sedentary work. Dr. August informed Prudential that his opinion had not changed. Lane also cites Dr. Rachlin's January 6, 2000 office note stating that "Mr. Lane is clearly completely disabled," and his January 13, 2000 report to Dr. August that Lane was taking two or three Percocet daily and appeared to be in severe distress. However, in the same report, Dr. Rachlin opined that "[t]he pain he has seems a bit out of proportion to the lesion seen." [9] In assessing this conflicting evidence, Prudential was not obligated to credit only those portions of the record that were favorable to Lane, nor is the court free to substitute its judgment for that of Prudential as the plan administrator.

█] Lastly, Lane argues that Prudential's decision to terminate his benefits violated the fiduciary obligation owed by the plan administrator to Lane and his family.[10] What I think Lane is saying is that this fiduciary obligation compelled Pruden-

tial to give him every benefit of the doubt and to weigh only the evidence in the record that supported his claim of disability. However, the fiduciary obligation imposed by the Plan runs not only to Lane but also to all other Plan participants. The payment of benefits to claimants who are not eligible would violate the duty owed to Plan members whose prospective right to benefits protection depends on the soundness of the Plan's administration.

### ORDER

As Prudential's September 28, 1999 decision to terminate Lane's LTD benefits is supported by substantial evidence, Gannett's motion for summary judgment is *ALLOWED*.[11]

SO ORDERED.

---

9. Assuming that Lane's condition in fact deteriorated after his surgery in April of 2001, and that he is, as he claims, totally disabled today, his case presents a recurring issue under ERISA. Does an employer who sponsors a disability plan thereby incur what would be, in effect, a lifetime obligation to an employee who is injured on the job, recovers sufficiently to lose his eligibility for benefits, but then later finds himself disabled because of subsequent medical complications? On the one hand, there is an equitable argument for imposing such an obligation, particularly where the recurring disability appears related to the preexisting injury. On the other hand, such an obligation could be potentially ruinous to the actuarial soundness of a plan given its unpredictability. This latter consideration is the most probable reason that Congress did not impose a continuing obligation on employers in enacting ERISA. It should also be noted that the Gannett Plan does provide for the reinstatement of a member who suffers a

recurring disability, but only if he has returned to work in the interim.

10. The Administration section of the Plan states that

[a]ll fiduciaries under the Plan and Trust shall act solely in the interests of the participants and their beneficiaries and in accordance with the terms and provisions of the Plan and Trust insofar as such documents are consistent with [ERISA], and with the care, skill, prudence and diligence under the circumstances them prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

11. In his motion for partial summary judgment, Lane asks the court to revisit its decision to reverse the Magistrate Judge's ruling and to remand the case to Gannett's Director for further review. The court is not inclined

to reconsider its decision for the reasons stated in its August 2, 2002 Memorandum and

