Phyllis A. KENT, Plaintiff–Appellant,

v.

UNITED OF OMAHA LIFE
INSURANCE COMPANY,
Defendant–Appellee.

No. 95–3608.

United States Court of Appeals,
Sixth Circuit.

Argued July 30, 1996.

Decided Sept. 20, 1996.

Before RYAN and SUHRHEINRICH, Circuit Judges; ENSLEN, Chief District Judge.*

John E. Duda, Julianne E. Hood (argued and briefed), Cleveland, OH, for Plaintiff–Appellant.

Gregory V. Mersol (argued and briefed), Arter & Hadden, Cleveland, OH, for Defendant–Appellee.

ENSLEN, Chief District Judge.

This appeal concerns an action for benefits under an employee benefit plan subject to the provisions of the Employee Retirement Income Security Act (E.R.I.S.A.), 29 U.S.C. § 1001 *et seq.* Plaintiff–Appellant Phyllis Kent contends that the trial court erred in making its determination that the defendant had complied with E.R.I.S.A.'s procedural requirements in denying her continued disability insurance benefits. We affirm.

I.

Phyllis Kent began work for Zurich Insurance Company ("Zurich") in October of 1985. There she participated in Zurich's long-term disability program, which was underwritten by defendant-appellee United of Omaha Life Insurance Company ("United").

United's disability plan provided two definitions of disability depending on the length of disability. During the first 24 months of a claimed disability, an employee is disabled if he/she "cannot perform each of the material duties of his [or her] regular occupation."

---

* The Honorable Richard Alan Enslen, Chief United ed States District Judge for the Western District of Michigan, sitting by designation.

After 24 months of benefits have been paid, the plan defines disability to include conditions which make the employee unable to perform "each of the material duties of any gainful occupation for which he [or she] is reasonably fitted by training, education or experience." Record at 28. Further, according to this plan, United had broad authority to determine questions of eligibility and the payment of benefits. *Id.* at 20.

On January 6, 1989, Kent sustained a back injury due to a fall on ice. Beginning in January 1991, Kent missed work due to the back injury and made a claim for disability benefits with United. At the time, Kent's orthopaedic surgeon as well as her chiropractor opined that she suffered from a temporary disability due to "recurrent fibromyositis, associated with muscle spasm and spinal-related headaches."

United initially approved Kent for disability payments beginning in April 1991. Following this, Kent and United began a long string of correspondence, which typically involved Kent obtaining additional opinions from her chiropractor that her return to work date should be further extended and United granting such requests. Her chiropractor extended her return to work date some eleven times.

United, concerned about these continual extensions, scheduled Kent for independent medical examinations by an orthopaedic surgeon and a neurologist and for a battery of objective tests. Following the tests and exams, both doctors concluded that there was no objective evidence of a disabling injury and that Kent could return to work with limitations.

In light of such opinions, United's agents explained to Kent that it was unlikely that United would continue benefits. To prepare Kent for this eventuality United hired a consultant to provide rehabilitation services. However, the consultant was unable to do so since he concluded that Kent was unwilling to work.

On February 6, 1992, United sent Kent a very short letter informing her that her benefits were being terminated because she was not disabled under the plan. According to United, its agents further explained the company's position to Kent by telephone calls on February 9, 1992 and afterwards.

Following her receipt of the letter, Kent retained counsel, to whom United provided the pertinent plan documents and medical records. Based on United's correspondence with counsel, it issued a second coverage determination dated September 3, 1993. This determination again denied benefits, but unlike the first letter, it cited the relevant plan language relating to disability, it informed her that the medical reports received did not support a finding of continued disability under the definition, and it informed her that she had a right to appeal the determination under the plan within 60 days of the date of that letter.[1]

Following this determination, Kent's attorney sent a letter appeal to United dated October 19, 1993 and accompanied by a report of Gerard Seltzer, M.D. This report indicated that Seltzer had examined Kent on July 12, 1993, had reviewed her medical file and that in Seltzer's opinion she was "totally and permanently disabled." Based on this correspondence, United agreed to schedule Kent for another neurological examination by a different neurologist. United's neurologist examined Kent on December 13, 1993. It was his conclusion based on the exam that Kent was not disabled and was able to return to work with minimal modifications to her workplace. About this same time, Kent's attorney had her chiropractor submit another letter to United stating that Kent was totally disabled until at least February 1, 1994.

However, Kent did not await further determinations from United.[2] Rather, she filed suit in the Court of Common Pleas of Cuya-

---

1. 60 days is the minimal appeal time allowed by the regulations. *See* 29 C.F.R. § 2560.503–1(g)(3).

2. Kent was not required to wait further since under 29 C.F.R. § 2570–1(h)(1) a review decision should be made within 60 days of the request (or 120 days in special circumstances). If a decision on review is not made on a timely basis, the appeal is deemed denied under the regulations. 29 C.F.R. § 2570–1(h)(4).

hoga County, Ohio alleging breach of the disability insurance plan at issue because of the denial of benefits and because of violations of E.R.I.S.A. mandated procedure. This suit was removed to the Northern District of Ohio on February 15, 1994.

This case was later tried by the district court on April 12–13, 1995. Following trial, the district court concluded that United gave Kent adequate notice of the denial of claim (by its letter of September 3, 1993) and advised her of her right to appeal the decision and submit additional evidence (which was in fact submitted but which did not persuade the company of a disability). Further, in light of the evidence that Ms. Kent could in fact return to work, the trial judge concluded that denial of benefits was not "an abuse of discretion" and therefore the company was not required to revisit the issue of coverage. Kent filed her notice of appeal on May 25, 1995.

## II.

This appeal asks the question of whether the disability claimant received the process required by E.R.I.S.A. (29 U.S.C. § 1133), and by the federal regulations enacted under E.R.I.S.A. (29 C.F.R. § 2560.503–1), as interpreted by the Sixth Circuit Court of Appeals in *Vanderklok v. Provident Life & Acc. Ins. Co.*, 956 F.2d 610, 615–616 (6th Cir.1992). Because the plan in question gave the fiduciary broad discretion to determine claims, the denial of the coverage decision itself is reviewed by the courts to determine if it was arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), *Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139–140 (6th Cir.1993); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir.1991). However, the question of whether the procedure employed by the fiduciary in denying the claim meets the requirements of Section 1133 is a legal question which the Court must review *de novo*. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1069 (6th Cir.1994).

Title 29 United States Code Section 1133 provides:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claims for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The meaning of this Section is further explained in regulations codified at Title 29 Code of Federal Regulations Section 2560.503–1. These regulations specify that a fiduciary shall establish a claim procedure which informs a claimant of a denial of a claim within 90 days of receipt of the claim. The regulations further specify that the procedure should inform the claimant of the specific reasons for denial of the claim including pertinent plan provisions relating to the denial, and should inform the claimant of his or her right to seek review of the claim decision. Further, these regulations require the fiduciary to establish a claim review procedure under which the claimant has at least 60 days to request review of the claim. Upon the request, review of the claim must ordinarily be completed within 60 days and, in exceptional circumstances, no later than 120 days from receipt of the request.

With these provisions in mind, the Sixth Circuit Court of Appeals in *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 615 (6th Cir.1992), held that a procedural notice was inadequate under Section 1133 because

it fails to provide the specific reason or reasons for denial and the specific reference to pertinent plan provisions on which the denial is based. Furthermore, although it states that Provident will review additional medical information, it does not contain explicit information as to the steps to be taken if the employee wishes to submit his claim for review, nor is there any indication of what additional proof might be required.

*Id.* In so determining, Circuit Judge Contie relied upon the decision of the Seventh Circuit Court of Appeals in *Wolfe* v. J.C. Penney Co., 710 F.2d 388 (7th Cir.1983), which recognized that errors in E.R.I.S.A. procedure may in some instances require remand to the fiduciary to determine whether the "additional evidence" not considered because of the procedural error warrants a modification of the claim decision. *Wolfe, supra* at 394. The *Vanderklok* panel, although following *Wolfe,* chose instead to remand to the district court for a determination of whether the additional evidence entitled the defendant to benefits. *Vanderklok, supra* at 617. Both cases were, however, distinguishable from another case discussed in *Wolfe, Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820, 824 (7th Cir.1980), in that *Wolfe* and *Vanderklok* involved claim decisions where the additional evidence might change the claim decision such that the remands represented more than a "useless formality." *Wolfe, supra* at 394. The attention directed in these opinions to the question of whether procedural violations require substantive remedies is not unique. Generally, the courts have recognized in E.R.I.S.A. cases that procedural violations entail substantive remedies only when some useful purpose would be served. *Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2nd Cir.1995); *Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1308 (9th Cir.1986); *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1096 (9th Cir.1985); *Offutt v. Prudential Ins. Co.,* 735 F.2d 948, 950–51 (5th Cir.1984).

 In this case, the alleged defects in claim procedure do not warrant reversal of the trial court's decision for two distinct, but related, reasons. First, this case can and should be distinguished from *Wolfe* and *Vanderklok* in that a remand in this case would represent a useless formality. In light of the plan language giving the fiduciary broad discretion to make coverage decisions, additional evidence is only pertinent to the extent that it shows that the fiduciary's decision was an abuse of discretion. Such a conclusion is patently untenable in this case because much, if not all, the objective medical evidence supports the conclusion that plaintiff was not disabled. This is particularly troubling given the fact that plaintiff's attorneys have already sought additional examinations and opinions to no avail. Accordingly, the Court determines that remand is unnecessary in this case because it would represent a useless formality.

 Second, even apart from the needlessness of remedies, the procedure utilized to inform the plaintiff of the status of her claim and her rights of appeal substantially complied with E.R.I.S.A.'s procedural requirements. It is true that the procedures utilized in this case were technically deficient because the first letter did not meet the requirements of the statute and regulation, and the second letter was untimely (it being issued more than 90 days after the decision to deny the claim). Nevertheless, the procedures, when viewed in light of the myriad of communications between claimant, her counsel and the insurer, were sufficient to meet the purposes of Section 1133 in insuring that the claimant understood the reasons for the denial of the claim as well as her rights to review of the decision. Other circuits have announced the rule that when claim communications as a whole are sufficient to fulfill the purposes of Section 1133 the claim decision will be upheld even if a particular communication does not meet those requirements. *Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.,* 32 F.3d 120, 127 (4th Cir.1994); *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 382 (7th Cir.1994); *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 690 (7th Cir.1992); *Davidson v. Prudential Ins. Co. of America,* 953 F.2d 1093, 1096 (8th Cir.1992). This rule, while respecting the necessity of fair procedure as outlined in Section 1133, appropriately recognizes that once the purposes of Section 1133 are met, justice does not require, indeed it forbids, the reversal of a claim decision based on a technical defect. Accordingly, as the Seventh Circuit made clear in *Donato, supra* at 382, in assessing E.R.I.S.A.'s procedural requirements the crucial issue is whether the purpose of Section 1133—that the claimant be notified of the reasons for the denial of the claim and have a fair opportunity for review—is fulfilled. Such a rule is also consis-

tent with our determination in *Vanderklok, supra,* which observed that in a case where no other communications were made relating to the denial of the claim the notice itself must comply with the Section 1133. This case is distinguishable from *Vanderklok, supra,* because in this case a large number of communications elucidated the claim beyond question. Accordingly, we adopt the rule of substantial compliance under Section 1133, apply the rule to this case and affirm the decision of the trial court based in part on that rule.

## III.

The decision of the district court is, therefore, affirmed.