Tosha **DUTTON**, Plaintiff,

v.

**UNUM PROVIDENT CORPORATION/THE PAUL REVERE COMPANY, a foreign corporation, Defendant.**

No. 1:00–CV–862.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 27, 2001.

Ralph O. Wilbur, Wilbur, Byington & McPhillips Law Offices, Hastings, MI, for Plaintiff.

K. Scott Hamilton, Dickinson Wright, PLLC, Detroit, MI, for Defendant.

## OPINION

ROBERT HOLMES BELL, Chief Judge.

This is an appeal from an administrative decision denying long term disability benefits under a plan governed by the Employ-ee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* For the reasons that follow the Court will affirm the administrative decision.

## I.

Plaintiff Tosha Dutton was employed as a staffing coordinator for the Ingham Regional Medical Center. Through her employment Plaintiff participated in the UNUM Provident/Paul Revere Life Insurance Company Group Insurance Policy ("the Plan"). The Plan included a long term disability policy.

On July 20, 1998, Plaintiff went on disability leave from her employment. She applied for and received long term disability insurance benefits on the basis of left peripheral nerve paralysis. (Admin.R. 1211.) Plaintiff returned to work on a part-time basis from January 4, 1999, to August 30, 1999, when she fainted at work. (Admin. R at 1015.) Plaintiff filed a second claim for total disability benefits based upon a diagnosis of atypical Bell's palsy with chronic pain with underlying anxiety disorder. (Admin. R. at 1010.) Plaintiff has not worked since August 30, 1999.

On December 29, 1999, Provident informed Plaintiff that based upon her medical records and Provident's conversation with Dr. Kwapiszewski, Plaintiff's treating physician, it appeared that Plaintiff no longer suffered from a physical condition that would preclude her from performing her occupation. Provident continued to pay benefits under a reservation of rights pending receipt and review of additional records relating to an apparent psychological condition. (Admin. R. at 1008.) On April 15, 2000, Provident notified Plaintiff that she was no longer totally disabled from her own occupation, and her long term disability benefits would be terminat-

ed as of May 1, 2000. (Admin. R. at 1274.)

Plaintiff appealed the decision. By letter dated September 22, 2000, Provident issued its final determination affirming its April 15, 2000, determination that Plaintiff was able to perform the duties of her own occupation as a scheduling coordinator and was not entitled to further long term disability benefits. (Admin. R. at 1320.)

Plaintiff filed this action. Plaintiff has filed a brief requesting that the administrative determination be reversed or that it be set aside and the record be reopened. Defendant has filed a brief in support of affirmation of the administrative determination.

## II.

At the Rule 16 Scheduling Conference in this case, the parties agreed that the Court should apply the arbitrary and capricious standard of review. Plaintiff now asserts that this standard of review is not supported by any of the formal Plan documents, and that the Court should accordingly consider what standard of review applies.

The Supreme Court has directed that judicial review of a plan administrator's denial of ERISA benefits is *de novo* as to both factual determinations and legal conclusions, unless the plan administrator has been given discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 613 (6th Cir.1998). An administrator's "discretionary authority" does not hinge on incantation of the word "discretion" or any other "magic word." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir.1998) (en banc). Instead,

courts should focus on the breadth of the administrators' power—their authority to determine eligibility for benefits or to construe the terms of the plan. *Id.* The grant of discretion must be clear. *Id.*

In *Perez* the Sixth Circuit reviewed language in a plan which provided that Aetna "shall have the right to require as part of the proof of claim satisfactory evidence . . . that [the claimant] has furnished all required proofs for such benefits." 150 F.3d at 555. According to the Sixth Circuit, the "only reasonable interpretation of the Plan is that Aetna requests the evidence, reviews it and then makes a benefits determination." *Id.* at 557. Such a plan "clearly grants discretion to Aetna because, under the reasonable interpretation of the language, Aetna retains the authority to determine whether the submitted proof of disability is satisfactory." *Id.*

In this case the Notice to Applicants provides:

> The Paul Revere Life Insurance Company, as claims administrator, has the *full, final, binding and exclusive authority* to determine eligibility for benefits and to interpret the policy under the plan as may be necessary in order to make claims determinations. The decision of claims administrator shall not be overturned unless arbitrary and capricious or unless there is no rational basis for a decision.

(Admin. R. at 1326 (emphasis in original).)

The Notice to Applicants constitutes a clear grant of discretionary authority to the administrator. The Plan provides that the contract is made up of "this Policy, the application of the policyholder, applications of the Participating Employers, and the application by each Employee." (Admin. R. at 1334.) Because the Notice to Applicants is part of the application of the policyholder, it is by definition part of the

contract and is sufficient to trigger application of the arbitrary and capricious standard of review.

## III.

■ Plaintiff's primary argument is that the April 15, 2000, letter denying her claim does not meet the ERISA statutory requirement that she be given notice of the specific reasons for the adverse determination or a description of the additional material necessary to perfect her claim. Accordingly, she requests that her case be remanded with instructions that the record be reopened to allow her to respond with appropriate medical records.

Section 1133 of ERISA provides that a Plan shall

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133(1) & (2).[1]

Plaintiff contends that the administrator's decision in this case violated § 1133 of ERISA because it failed to provide the specific reasons for denial, and thus failed to give Plaintiff a reasonable opportunity for full and fair review.

Moreover, Plaintiff complains that although her attorney, in his letter appealing the administrative decision, demanded that he be given notification of what statements or lack of statements the Plan was relying on that caused it to conclude Plaintiff could perform her occupation (Admin. R. at 1299) he received no response from Provident.

■ The question of whether the procedure employed by the fiduciary in denying the claim meets the requirements of Section 1133 is a legal question which the Court must review *de novo*. *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 806 (6th Cir.1996) (citing *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1069 (6th Cir. 1994)).

In *VanderKlok v. Provident Life and Acc. Ins. Co.*, 956 F.2d 610 (6th Cir.1992), the plaintiff had not been provided with timely written notice of the denial, and was accordingly deprived of the opportunity to present his claim during the administrative appeal. The Sixth Circuit remanded the case for a *de novo* review of the record and allowed plaintiff to submit additional evidence for review. The Sixth Circuit also noted that even had the notice been timely, the notice was inadequate because the written notice failed to provide the specific reason or reasons for denial. *Id.* at 616–17. The written notice at issue in *VanderKlok* provided in pertinent part:

1. The regulations promulgated under section 1133 provide in pertinent part that the notice shall contain:

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

29 CFR § 2560.503–1(g).

We regret that the claim does not qualify under the total and permanent disability benefits provision of the policy, because the proof submitted does not establish that the insured is totally and permanently disabled from all work for the remainder of his life. We will be happy to review any additional medical information which Mr. Vanderklok may wish to submit.

*Id.* at 616. The Sixth Circuit found the written notice to be defective because it failed to provide the specific reason for denial, specific reference to pertinent plan provisions on which the denial was based, information as to the steps to be taken to submit the claim for review, or any indication of what additional proof might be required. *Id.*

Plaintiff does not deny that the notice in this case was timely, that it was sent directly to her and that it contained explicit information as to the steps to be taken if she wished to submit her claim for review. Plaintiff nevertheless contends the notice suffers from the same defects as the notice in *VanderKlok* because it failed to provide the specific reason for denial, specific reference to pertinent plan provisions on which the denial is based, information as to the steps to be taken if the employee wished to submit her claim for review, or any indication of what additional proof might be required.

Since *VanderKlok* was decided the Sixth Circuit has adopted the rule of substantial compliance with ERISA's procedural requirements under Section 1133. *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 808 (6th Cir.1996). Under this rule, "when claim communications as a whole are sufficient to fulfill the purposes of Section 1133 the claim decision will be upheld even if a particular communication does not meet those requirements." *Id.* at 807 (citing cases). The *Kent* court explained that the purposes of § 1133 are to insure that the claimant understands the reasons for the denial of the claim as well as her rights to review of the decision.[2] *Id.* In evaluating whether there has been substantial compliance with these purposes, the court should consider all of the communications between the claimant, her counsel, and the insurer. *Id.*

The administrator's decision in this case is contained in the denial letter of April 15, 2000, which incorporates by reference the letter of December 29, 1999. In order to evaluate whether Plaintiff was given sufficient notice of the reasons for the denial of long term disability benefits, the Court must consider both letters.

The December 29, 1999, letter contained the following notice:

Please be advised, it is the opinion of this office that the medical records do not support the presence of a medical impairment at this time. Please be advised "Bells Palsy" is not a condition that would disable a person for over a year. This was confirmed by your most recent attending physician statement dated December 2, 1999 in which Dr. Kwapiszewski documented your diagnosis to now be "Fribromyalgia." It was further noted in her medical records dated September 1, 1999 and September 13, 1999, that you were experiencing "severe anxiety episodes."

(Admin. R. at 1008.) The letter further advised that according to Dr. Kwapiszewski, as of November 8, 1999, Plaintiff's

---

2. Other courts have explained that the notice requirement is necessary so that plan beneficiaries "can adequately prepare ... for any further administrative review, as well as an appeal to the federal courts." *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir.1998) (quoting *Matuszak v. Torrington Co.*, 927 F.2d 320, 323 (7th Cir.1991)).

primary impairing diagnosis was "hypertensive crisis with syncope secondary to stress." *Id.* Based on this information "it is the opinion of this office that the medical records received in this office do not support a physical condition that would preclude you from performing your occupation." *Id.* However, in light of the fact that Plaintiff appeared to be suffering from an underlying condition that was causing her problems, the letter advised that it would issue benefits under a reservation of rights while it sought updated medical records from Dr. Kwapiszewski and Dr. Sauerbrey. *Id.*

The April 15, 2000, letter advised that the medical records concerning Plaintiff's current diagnosis of "fibromyalgia" were not sufficient to support a physical condition that would preclude her from performing her occupation. (Admin. R. at 1274.) It also advised that no records had been received from her psychiatrist, Dr. Sauerbrey. *Id.*

Based upon the December and April letters, Plaintiff was adequately notified that Bell's palsy was not expected to last more than a year, that her doctor was no longer listing Bell's palsy as the primary impairing diagnosis, and that the medical records concerning her Bell's palsy and her fibromyalgia did not support a physical condition that would preclude her from performing her occupation. Plaintiff was also adequately notified that no records had been received from her psychiatrist, so there was insufficient evidence on file to support a mental disorder that would preclude her from performing her occupation.

■ Plaintiff contends this notice was not sufficient because she was not told what Defendant was relying upon, what it was rejecting, and what rules applied. Plaintiff complains that she did not have copies of her doctors' evaluations or copies of the Plan's internal medical evaluations.

Plaintiff appears to be contending that notice under § 1133 means providing copies of all the medical evidence upon which the Plan relied in making its determination. The Court is aware of no authority that would support such a contention. Notice under § 1133 of the specific reasons for denial has never been interpreted by the courts to require a Plan to provide the claimant with a copy of the full administrative record. Neither does notice require a Plan to explain its actions in response to demands presented by Plaintiff or her counsel. The burden is not on the Plan to show that a claimant is not disabled, but on the claimant to show that she is disabled. Plaintiff had access to her own medical records. She was on notice that the medical evidence on file was not sufficient to show that either her Bell's palsy, fibromyalgia, or mental disorder precluded her from performing her occupation. She was on notice that the Plan was relying on records from her own treating physician, and the lack of records from her psychiatrist. The letters were sufficient to put Plaintiff on notice regarding the reasons for her denial of benefits.

■ Plaintiff complains that she was not advised what steps she would need to take to perfect her claim. It is not the Plan's duty to advise Plaintiff what medical evidence she needs to show disability. The claimant's doctors, not the Plan, determine what the disabling condition is, and what tests need to be done to diagnose and treat that condition. As noted by the First Circuit, the § 1133 notice requirement does not require the administrator to inform the claimant of what additional information the claimant should include in order to win an appeal. *Terry v. Bayer Corp.,* 145 F.3d 28, 39 (1st Cir.1998). The regulations mandate that the administrator describe what is required to "perfect the claim," and that is not synonymous with "win the appeal."

*Id.* The Court is satisfied that the communications as a whole were sufficient to satisfy the § 1133 notice requirement.

■ In addition, the Sixth Circuit noted in *Kent* that remand would not be required where it would represent a "useless formality." *Kent*, 96 F.3d at 807. Attached to Plaintiff's reply brief are some additional medical records Plaintiff would like the Plan to consider. Plaintiff has presented evidence from Paul Delmar, Ph.D., a licensed psychologist, that the left side of her face and the left side of her mouth do not move, and that she has a current score of 55 on the Global Assessment of Functioning ("GAF") scale, placing her symptoms between moderate and serious. Where the Plan language gives the fiduciary broad discretion to make coverage decisions, "additional evidence is only pertinent to the extent that it shows that the fiduciary's decision was an abuse of discretion." *Kent*, 96 F.3d at 807. Neither the facial paralysis nor the GAF score would tend to show that the fiduciary's decision that Plaintiff is able to perform her prior sedentary occupation was an abuse of discretion. Accordingly, it appears that a remand would be a useless formality.

The Court is satisfied that the communications from the Plan satisfied the notice requirements of § 1133, and that Plaintiff is not entitled to a remand to further develop the record.

## IV.

At oral argument Plaintiff made clear that she has a second challenge to the administrator's determination. In addition to her notice argument, she contends that the decision to deny her long term disability benefits was arbitrary and capricious because the Plan did not properly evaluate the evidence of record. Plaintiff contends the record clearly supports Plaintiff's total disability.

■ As noted previously, the Plan's determination will be reviewed under the arbitrary and capricious standard of review. This standard of review is highly deferential. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Abbott v. Pipefitters Local Union No. 522*, 94 F.3d 236, 240 (6th Cir.1996). As long as the administrator's decision is rational in light of the plan's provisions, it must be upheld. *University Hospitals of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir.2000).

■ The medical records reveal that after Plaintiff's initial diagnosis of Bell's palsy, she recovered sufficiently to return to work on a part-time basis for nine months. Plaintiff went back on disability leave at the end of August when she fainted at work. In September 1999 Plaintiff's treating physician diagnosed Plaintiff with an acute anxiety episode. She was prescribed Inderal and Elavil, an anti-depressant. (Admin. R. at 1017.) On September 15, 1999, Dr. Kwapiszewski reported to Provident that Plaintiff had a diagnosis of atypical Bell's palsy with chronic pain with underlying anxiety disorder. (Admin. R. at 1033.) In October 1999, Dr. Kwapiszewski noted that physical therapy was helping tremendously, that Plaintiff had had no more episodes of high blood pressure or palpitations, and that she had less facial droop. (Admin. R. at 1236.) In October 1999, Dr. Battan, an endocrinologist, ruled out any thyroid hormone imbalance as the cause of Plaintiff's panic attacks. (Admin. R. at 1263.) When Provident's medical consultant, Dr. Schwartz, contacted Dr. Kwapiszewski on November 8, 1999, Dr. Kwapiszewski advised that Plaintiff's primary impairing diagnosis was that she gets a "hypertensive

crisis with syncope secondary to stress." (Admin. R. at 1015.) Dr. Kwapiszewski opined that while Plaintiff might be able to return to work in the near future, she could never return to her former occupation because it is too stressful. *Id.* Pursuant to Dr. Schwartz's recommendation, Dr. Kwapiszewski referred Plaintiff to Dr. Sauerbrey, a psychiatrist, for evaluation. (Admin. R. at 1239.) After seeing Plaintiff for a follow-up on her Bell's palsy in November 1999, Dr. Kwapiszewski noted that Plaintiff still has pain on the left side of her face but "her function is markedly improved," and "[s]he overall seems to be doing extremely well." (Admin. R. at 1239.) As of December 1999, Dr. Kwapiszewski noted that although Plaintiff stated that her left facial pain was still debilitating, Plaintiff now reported that what was significantly disabling her was fibromyalgia. (Admin. R. at 1242.)

Dr. Schwartz noted that with respect to the diagnosis of hypertension, the medical records revealed a peak blood pressure of 186/98, but the remainder of the numerous blood pressure readings were either normal or borderline. (Admin. R. at 1015.) Dr. Schwartz also noted in his report that the great majority of individuals with Bell's palsy would never qualify or apply for long term disability, and that this fact was confirmed by Plaintiff's treating physician. (Admin. R. at 1015.)

The evidence in the administrative record supports the Plan administrator's determination in December 1999, that Plaintiff was no longer suffering from a physical impairment that rendered her totally disabled. The Plan did not, however, terminate benefits at that time. Instead, the Plan advised Plaintiff that it would continue benefits under a reservation of rights, and would request updated medical records from Dr. Kwapiszewski and Dr. Sauerbrey.

Despite repeated requests, the Plan did not receive any medical records from Dr. Sauerbrey. The Plan contacted Plaintiff by telephone in March 2000, and learned from Plaintiff that she had not seen Dr. Sauerbrey since the beginning of the year. (Admin. R. at 1252.)

■ With respect to mental disorders the Plan provides:

> With respect to any Disability caused or contributed to by an ongoing Mental Disorder and/or Substance Use Disorder, an employee will be considered to be Disabled only if he is satisfactorily participating in a program of treatment or rehabilitation approved by Us.

(Admin. R. at 1341.) Because Plaintiff was not participating in a program with Dr. Sauerbrey, the Plan's determination that she was not suffering from a mental disorder that prevented her from performing her job was not arbitrary and capricious. Between December 1999 and April 2000 the Plan received no further records from Dr. Kwapiszewski. The Plan's decision in April 2000 to terminate benefits was supported by some evidence of record, and accordingly was not arbitrary and capricious.

When Plaintiff filed her appeal, she submitted a May 20, 2000, letter from Dr. Kwapiszewki, which states in pertinent part:

> The patient was seen with complaints of earaches approximately a year ago when she saw Dr. Hallak who diagnosed her with Bell's palsy and prescribed medication for her. She had an MRI and a CT to rule out CNS lesions and they were negative. Her chief complaint mostly was left lateral neck and ear pain. She also experienced significant vaso motor-type symptoms that occurred under stressful situations and great fluxuations of blood pressure.

She is unable to deal with the stress of work and she required medical leave of absence.

(Admin. R. at 1295.) The letter does not speak to whether Plaintiff was currently able to return to work.

During the appeal period the Plan received records from Dr. Sauerbrey. These records similarly fail to indicate that Plaintiff was totally disabled. The records indicate that Plaintiff was diagnosed by Dr. Sauerbrey with a panic disorder, and that treatment was terminated after three visits. Dr. Sauerbrey indicated that he discussed stress reduction strategies with Plaintiff, but that it was unclear whether she was able to resume her regular occupation because she had not been seen for several months. (Admin. R. at 1279.)

The updated medical records were reviewed by at least three individuals at Provident. Judy Ellington, RN, concluded that there was no objective data supporting an impairment form either the physical diagnosis or underlying anxiety disorder that would preclude her from performing the duties of her own or another occupation. (Admin. R. at 1309.) Dr. Soufleris concluded that the medical records do not support the diagnosis of Panic Disorder by DSM IV criteria. (Admin. R. at 1311.) Dr. Beecher concluded that there is no physical medical condition that would cause impairment for a sedentary physical demand job. (Admin. R. at 1314.)

Based upon the medical records and the internal medical review, the Plan determined that there continued to be "no evidence or objective data to support an impairment from either the physical diagnosis or an underlying anxiety disorder that would preclude Ms. Dutton from performing the duties of her own occupation as a scheduling coordinator." (Admin. R. at 1320.) The Plan accordingly entered a final order affirming its initial de-termination that Plaintiff was no longer entitled to long term disability. (Admin. R. at 1320.)

The administrator's decision to terminate Plaintiff's long term disability benefits was rational in light of the evidence and the Plan's provisions. Accordingly, Plaintiff's argument that the determination must be reversed as arbitrary and capricious will be denied. The Plan is entitled to a judgment affirming the decision to terminate Plaintiff's long term disability benefits.

An order and judgment consistent with this opinion will be entered.