NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0304n.06
Filed: May 3, 2006

No. 05-3380

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CHARLES BUCHANAN,

      Plaintiff-Appellant,

v.

AETNA LIFE INSURANCE COMPANY,

      Defendant-Appellee.

On Appeal from the United
States District Court for the
Northern District of Ohio

_____/

BEFORE:    RYAN, CLAY, and GILMAN, Circuit Judges.

      RYAN, Circuit Judge.     The plaintiff, Charles Buchanan, appeals the district court's judgment in favor of the defendant, Aetna Life Insurance Company, on his ERISA claim for disability benefits, and on Aetna's counterclaim for reimbursement of benefits it overpaid Buchanan. We **AFFIRM** the court's judgment in favor of Aetna on Buchanan's claim, but **REVERSE** the grant of summary judgment in favor of Aetna on its counterclaim.

**I.**

      Buchanan began working as a computer programmer for Progressive Casualty Insurance Company in September 1996 and was a participant under Progressive's Managed Disability Benefits Plan, which was administered by Aetna. Under the plan, a participant was eligible to receive disability benefits after a period of 24 months only if he was "not able, solely because of disease or injury, to work at any reasonable occupation."

The plan defined "reasonable occupation" as "any gainful activity for which you are, or may reasonably become, fitted by education, training or experience."

An eligible plan participant received a monthly disability benefit equal to a percentage of his monthly salary, and the plan permitted Aetna to reduce that monthly benefit by "other income benefits," which included Social Security Disability Insurance (SSDI) benefits.  The plan also provided that the participant was required to repay to Aetna any overpayment of benefits that resulted from the receipt of other income benefits.

**II.**

In June 1997, Buchanan left work due to hypertension and syncope, and began to receive monthly disability benefits from Aetna in October 1997.  In addition, he began receiving SSDI benefits in January 1998.  Aetna claims it did not learn about Buchanan's SSDI payments until September 1999.

In a letter dated October 7, 1999, Aetna informed Buchanan that it had overpaid him by a total of $15,120 as a result of his receiving SSDI benefits in addition to Aetna's full monthly benefit.  In order to recover at least part of that overpayment, Aetna began to withhold benefit payments, but Aetna alleges that approximately $11,000 remains unpaid.

In 2000, Aetna conducted a review of Buchanan's claim and concluded that he was no longer entitled to disability benefits because he had received benefits for more than 24 months, and the evidence showed that he was able to perform the duties of a reasonable occupation as defined by the plan.  In a letter dated July 2000, Aetna informed Buchanan that his benefits were terminated effective May 31, 2000.  Buchanan asked Aetna to reconsider its decision, but, in a letter to Buchanan dated April 2, 2001, Aetna upheld its original decision.

Buchanan filed a claim in the federal district court to recover benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and Aetna filed a counterclaim under ERISA for reimbursement of benefits it allegedly overpaid. Buchanan filed a motion to supplement the administrative record with, among other things, a 1997 MRI film and report that Aetna and its independent medical examiner had allegedly refused to accept. The district court denied that motion. Both parties then filed motions for judgment, and the court granted judgment in favor of Aetna on Buchanan's claims and Aetna's counterclaim.

## III.

Traditional summary judgment concepts are inapposite to the adjudication of an ERISA action for benefits, brought under 29 U.S.C. § 1132(a)(1)(B), because the district court is limited to the evidence before the plan administrator at the time of its decision, and therefore, the court does not adjudicate an ERISA action as it would other federal civil litigation. See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 617-19 (6th Cir. 1998). We review de novo the district court's ruling regarding an ERISA plan administrator's denial of benefits, applying the same legal standard as the district court. Whitaker v. Hartford Life & Acc. Ins. Co., 404 F.3d 947, 949 (6th Cir. 2005). When the plan provides the administrator discretionary authority to determine eligibility for benefits, the arbitrary and capricious standard of review applies. Id. The district court held that Aetna had discretionary authority under the plan to determine benefit eligibility, and Buchanan appears to agree. Therefore, we review Aetna's decision denying benefits under the arbitrary and capricious standard of review.

An administrator's conflict of interest does not alter the standard of review; rather, the court should take that conflict into account when determining whether the

administrator's decision was arbitrary and capricious. Peruzzi v. Summa Med. Plan, 137 F.3d 431, 433 (6th Cir. 1998). We must uphold Aetna's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991). Because Aetna was both the insurer and the plan administrator, it had a conflict of interest.

Although the district court discussed traditional summary judgment standards at some length, the court nevertheless properly applied the arbitrary and capricious standard of review using the evidence available to Aetna at the time of its decision. The court acknowledged Aetna's conflict of interest and the requirement that it factor that conflict into its review. The court then determined that Aetna did not act in an arbitrary and capricious manner when it terminated Buchanan's benefits because reports from two independent medical examiners provided a "reasoned explanation" for Aetna's decision.

Buchanan points out that, in a letter, his doctor stated: "The resulting disability produced by this condition has produced a severe degree of cognitive impairment and fatigability which I strongly feel makes him disabled from working. . . . I believe Mr. Buchanan is disabled from his previous type of employment (and perhaps from many types of meaningful employment)." (Emphasis added.) But the test, according to the plan language, is whether Buchanan was able to work at a "reasonable occupation," which is defined in the plan as "any gainful activity." (Emphasis added.) The record shows that two independent medical examiners concluded that Buchanan could perform meaningful work.

Although Aetna's April 2, 2001, letter upholding its original decision to terminate Buchanan's benefits indicates that Aetna reviewed a portion of medical records belonging

to someone other than Buchanan, we respectfully disagree with our dissenting colleague's position that Aetna's error rendered its decision arbitrary and capricious.

The April 2, 2001, letter contains an incorrect address and social security number, and it states that there is "no record provided of the cardiac cath findings," but that "[t]here are clear reports . . . of panic attacks and anxiety disorder, which responded to Xanax." Buchanan insists that he has never received a cardiac catheter or taken Xanax to control anxiety, and there is no evidence in the record suggesting he has.

The letter also references the two independent medical examinations Aetna ordered and the letter from Buchanan's doctor, which provide substantial evidence in support of Aetna's decision to terminate Buchanan's disability benefits. There is also no indication that Aetna's mistake of reviewing a portion of medical records belonging to someone other than Buchanan resulted in a selective, inadequate, or otherwise unprincipled review of Buchanan's medical records. Therefore, we agree with the district court that the record contains substantial evidence supporting Aetna's decision to terminate Buchanan's disability benefits and that Aetna employed "a deliberate, principled reasoning process" to reach that decision.

We also conclude that the court did not err in denying Buchanan's motion to supplement the administrative record with, among other things, a 1997 MRI film and report indicating that he suffered a stroke. The district court may consider evidence outside of the administrative record only if "consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." Wilkins, 150 F.3d at 618. Buchanan did not raise a procedural challenge to Aetna's decision in his

motion to supplement the record.  He simply argued that "the record is flawed and not developed properly," and he offered no evidence in support of the motion beyond the mere allegation that Aetna refused to accept the proper MRI film and report.

**IV.**

Traditional summary judgment concepts do apply to the adjudication of Aetna's counterclaim for reimbursement.  We review the district court's legal conclusions and its grant of summary judgment in favor of Aetna de novo, using the same Fed. R. Civ. P. 56(c) standard as the district court.  Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Appalachian Res. Dev. Corp. v. McCabe, 387 F.3d 461, 463 (6th Cir. 2004).

The parties do not dispute the facts.  The terms of the plan clearly provide that Buchanan is obligated to reimburse Aetna for the benefits it overpaid as a result of his receipt of SSDI benefits.  Buchanan argues only that the law does not provide Aetna with a remedy.  Unfortunately, we must agree.  The Supreme Court's decision in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002), and our later decision in Qualchoice, Inc. v. Rowland, 367 F.3d 638 (6th Cir. 2004), cert. denied, 125 S. Ct. 1639 (2005), prohibit Aetna from recovering the money it overpaid.

29 U.S.C. § 1132(a)(3) provides that an ERISA civil action may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

(Emphasis added.)  In <u>Knudson</u>, the Supreme Court held that the term "equitable relief" in 29 U.S.C. § 1132(a)(3) refers to the categories of relief <u>typically</u> available in equity. <u>Knudson</u>, 534 U.S. at 209-10.  The Court further explained that not all forms of restitution were available in equity and that "a plaintiff could seek restitution <u>in equity</u>, . . . where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."  <u>Id.</u> at 213.

The money Aetna claims it overpaid to Buchanan is not clearly traceable to particular funds in his possession.  Although Aetna characterizes its claim as one for unjust enrichment, it actually seeks "legal relief—the imposition of personal liability . . . for a contractual obligation to pay money."  <u>Id.</u> at 221.  As we held in <u>Qualchoice</u>, "a plan fiduciary's action to enforce a plan-reimbursement provision is a legal action," which 29 U.S.C. § 1132(a)(3) does not authorize.  <u>Qualchoice</u>, 367 F.3d at 650.

**V.**

For these reasons, we **AFFIRM** the district court's judgment in favor of Aetna on Buchanan's claim for benefits under 29 U.S.C. § 1132(a)(1)(B), and we **REVERSE** the court's grant of summary judgment in favor of Aetna on the counterclaim for reimbursement of benefits it overpaid and **REMAND** to the district court.

**Clay, Circuit Judge, dissenting in part.** I agree that the district court improperly granted summary judgment to Defendant on Defendant's recoupment of overpayments claim. I disagree with the majority, however, that Defendant's denial of benefits was the result of a "deliberate, principled reasoning process" because the evidence clearly shows that Defendant considered, in part, someone else's medical records when it evaluated Plaintiff's case. I would therefore vacate the grant of summary judgment for Defendant on Plaintiff's denial of benefits claim and remand the case to the district court, with instructions for further remand to the plan administrator for a proper consideration of Plaintiff's claim for benefits.

## I.

## BACKGROUND

On September 16, 1996 Plaintiff was hired by Progressive Insurance Co. as a computer programmer/analyst. Plaintiff then enrolled in Progressive's ERISA-governed disability benefits plan, for which Defendant was the claims administrator.

Plaintiff had a history of hypertension, which Plaintiff alleges was under control until February 1997, at which time Plaintiff underwent an appendectomy. Subsequent to the appendectomy, Plaintiff's recovery was difficult and resulted in an increase in his hypertension and a "cerebrovascular accident." Plaintiff left work on June 5, 1997 due to hypertension and syncope,[1] and in October 1997 Plaintiff's treating physician diagnosed

---

[1]syncope: a temporary suspension of consciousness due to generalized cerebral ischemia (deficiency in blood). *Dorland's Illustrated Medical Dictionary* 1514 (25th ed. 1974).

the likely cause of the syncope as a stroke, or brain stem infarct,[2] in early June 1997. After performing an MRI to confirm the infarct, Plaintiff's physician, Dr. Grubb, diagnosed Plaintiff with autonomic dysfunction resulting from damage to the brain stem area controlling autonomic function. Plaintiff's condition resulted in extreme migraines and fatigability, in addition to syncopal episodes. Plaintiff applied for and received disability benefits commencing in October 1997.

On October 7, 1999, Defendant requested reimbursement from Plaintiff for alleged overpayments for the period of January 1, 1998 through September 30, 1999, during which time Plaintiff was also receiving social security disability payments. Defendant alleged that long term disability payments were offset under the plan to the extent of any social security disability monies received.

After 24 months of disability, Plaintiff's disability plan provided for continuing payments only if a claimant "cannot perform all of the material duties of any gainful occupation for which [claimant] [is] or may become reasonably fitted by training, education or experience." (J.A. at 201.) Defendant therefore undertook a review of Plaintiff's disability status in 2000. In a letter dated July 13, 2000, Defendant informed Plaintiff that its review of Plaintiff's condition did not support Plaintiff's continued status as disabled. Defendant stated that information provided by Plaintiff's attending physician, a Dr. Grubb, indicated that there was no objective information which supported Plaintiff's ongoing disability. Defendant further noted that based on information from Dr. Grubb, it "appears

---

[2]infarct: an area of coagulation necrosis in a tissue due to local ischemia resulting from obstruction of circulation to the area. *Dorland's Illustrated Medical Dictionary, supra* note 1*, at* 778.

your condition is under reasonable control and you would be able to perform the duties of sitting, computer keyboarding [and] programming, and phone work." (J.A. at 201.) Defendant therefore terminated Plaintiff's disability benefits as of May 31, 2000.

On July 24, 2000 Plaintiff appealed Defendant's termination of benefits through Defendant's administrative appeals procedure. Defendant submitted a letter from Dr. Grubb which referenced the MRI confirming the brain stem stroke and repeating his diagnosis of autonomic disorder manifesting in cognitive impairment, severe migraines, and fatigability. The letter also stated Dr. Grubb's opinion that Plaintiff "is disabled from his previous employment (and perhaps from many types of meaningful employment )." (J.A. at 171.) Defendant then referred Plaintiff for evaluation by independent medical personnel of the North American Medical Evaluations, Inc. Plaintiff was given a psychological evaluation and a medical exam. The psychologist determined that Plaintiff performed in the average range of cognitive function, exhibited mild impairment in some motor function, exhibited mild depression, and showed difficulty in maintaining alertness. The psychological report concluded that Plaintiff could return to work if given accommodations such as frequent breaks to refresh alertness.

Plaintiff's independent medical examination took place on November 21, 2000. In the letter notifying Plaintiff of the medical appointment, Defendant invited Plaintiff to "obtain and bring any medical records, X-ray films, MRI films and any test results to assist in this evaluation." (J.A. at 169.) Defendant alleges that Plaintiff produced no MRI showing his brain stem infarct. Plaintiff alleges that Plaintiff brought the relevant MRI, dated September 29, 1997, with him to the medical evaluation, but that the physician refused to take the film from Plaintiff, saying instead that the physician would procure the MRI from the hospital.

Plaintiff further alleges that his wife sent a copy of the relevant MRI to Defendant at some time.

The independent medical evaluation concluded that "[t]he patient has hypertension and depression.  There is no clearcut explanation of his episodic complaints.  Of note, however, I see no clearcut reason why this patient could not perform his previous employment."  (J.A. at 151.)  Earlier in the letter, the physician noted that Plaintiff took Celexa for his depression.  The  physician further noted that while Plaintiff's wife reported to him an MRI revealing a stroke, the "official report . . . on the head MRI study obtained through . . . Akron General Medical Center  [dated] October 23, 1998 was negative except for 'mild bilateral maxillary and ethmoid sinusitis.'"  (J.A. at 150.)

There is no indication in Plaintiff's medical records from his treating physicians that Celexa was described for depression.  Rather, Celexa, while a popular antidepressant, appears to have been prescribed by Dr. Grubb to address Plaintiff's headaches and extreme fatigue.  (*See* J.A. at 190.)  Nothing in Plaintiff's medical records reveals a diagnosis of depression by his attending physicians.  (*See* J.A. at 223, Medical Provider Statement by Dr. Grubb, noting diagnosis of syncope and autonomic disorder, but not depression, and recording Celexa as a prescribed medication).)

In a letter dated April 2, 2001, Defendant denied Plaintiff's appeal of the termination of his disability benefits.  The letter was addressed to Plaintiff, but contained the wrong address and the wrong social security number.  The letter summarized Defendant's assessment of Plaintiff's  claim:

> Your diagnosis is autonomic dysfunction syndrome, stroke secondary to anesthesia during surgery and cervical pain.

You have been out of work as a Computer Programmer/Analyst since June 5, 1997 due to hypertension syncope. Office notes indicate that you were told in October, 1997 that you may have had a stroke over the summer. Rehabilitation followed your case with the onsite individual from October 1997. In June, 1998, it appeared that you were released to return to work but you developed panic attacks therefore a psychiatric referral was made. You had medication changes that made you ill that psychiatric referral was cancelled and was not rescheduled. Other notes indicate that you had a cardiac cath[eter] on August 4, 1999 with discharge on August 5, 1999 with possible surgery indicated, but no surgery was noted. On February 15, 2000 notes your doctor reported that you have had no recent syncopal episodes and your blood pressure was well controlled. You stated you may possibly have sleep apnea but sleep studies were normal.

There are numerous reports from you and your wife regarding your symptoms but there is very little objective medical information. The objective information that is present was all provided in the first 2 years of your disability. There is no clinical record provided to substantiate seizure disorder, no MRI report confirming a stroke and no record provided of cardiac cath findings. There are clear reports from your doctor's officer of panic attacks and anxiety disorders, which responded to Xanax. There have been no observable, objective tests, which substantiate total disability to any reasonable occupation.

You reported you were unable to drive due to severity of fatigue and sleepiness, but surveillance is reported to clearly document otherwise.[3]

(J.A. at 374-75.)

There is no indication in Plaintiff's medical records that Plaintiff ever received a cardiac catheter or was ever even referred for such a procedure, and Plaintiff denies undergoing any. Plaintiff further alleges that the denial letter references medications that Plaintiff never took. Plaintiff's address was, at all relevant times, 372 East Cassell Ave., Barberton, OH 44203. The letter was addressed to Plaintiff at 6020 Periwinkle Dale,

---

[3]Defendant had Plaintiff surveilled on May 11, 13, and 15, 2000. The surveillance reports indicated that Plaintiff was observed on May 11 operating a Mazda pick-up three times, and on May 13 he operated the same truck for a single trip to the local middle school. (J.A. at 198-200.)

Seneca, SC 29672.  Plaintiff's social security number is xxx-xx-2752.  The letter referenced

social security number xxx-xx-6220.  (full social security numbers omitted for confidentiality

purposes)

## II.

## ANALYSIS

### A.    The District Court Erred by Refusing to Permit *Wilkins* Discovery

This Court reviews the district court's decision on whether to permit discovery

beyond the administrative record *de novo*.  *Cf. Putney v. Medical Mut.*, 111 Fed. Appx. 803,

806 (6th Cir. 2004) (unpublished opinion).

Plaintiff argues that the district court should have granted Plaintiff's motion to either

supplement the administrative record or remand for correction because Defendant violated

Plaintiff's procedural due process rights when it refused to consider the September 27,

1997 MRI.  Plaintiff presents evidence that the MRI had been available to Defendant

(Plaintiff's wife having proffered the MRI to the physician performing the independent

medical evaluation) in the form of an affidavit from Plaintiff and Plaintiff's wife; the affidavit

had the referenced MRI attached.  (*See* J.A. at 48-50.)  Defendant asserts in briefs to this

Court that the MRI's lack of presence in the administrative record proves its unavailability

to Defendant, but puts forth no evidence, save the state of the administrative record itself,

in support of that assertion.

In *Wilkins*, this Court clarified when and to what extent a district court may go

beyond the administrative record in reviewing an ERISA administrator's decision.  *Wilkins*

*v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618-19 (6th Cir. 1998).  This Court instructed

district courts to follow a two-step process in adjudicating an ERISA benefit action:

> 1.      As to the merits of the action, the district court should conduct a *de novo* [or arbitrary and capricious] review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.

> 2.      The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

*Id.*

Plaintiff has alleged a procedural violation by Defendant.  If true, the procedural

violation is significant, for it wrongfully precluded the only fully objective medical evidence

of the cause of Plaintiff's condition from appearing in the administrative record.  Under

*Wilkins*, the district court should have permitted discovery to the extent the parties could

adduce evidence as to whether Defendant had the September 1997 MRI available to it

when ruling on Plaintiff's claim for continued benefits.

Should discovery have revealed that Defendant did have the MRI available to it, the

district court could have followed one of two recourses.  First, the district court could have

permitted the parties to supplement the administrative record with the MRI and any relevant

medical interpretations of the MRI.  *Id.*  Second, and perhaps more appropriately, the

district court could have remanded the case to the administrator.  *Vanderklok v. Provident

Life & Accident Ins. Co.*, 956 F.2d 610, 619 (6th Cir. 1992).  While remand is appropriate

only in those cases where some useful purpose would be served from remand, the inclusion of the MRI in the administrative record, as the only objective evidence of the cause of Plaintiff's condition, is central to the benefits determination and therefore justifies such remand. *See Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807-08 (6th Cir. 1996).

## B.     The District Court Erred in Granting Summary Judgment to Defendants on Plaintiff's Claim for Benefits

### *1.     Standard of Review*

In an ERISA benefits case, this Court reviews de novo a district court's decision on the administrative record. *See Spangler v. Lockheed Martin Energy Sys.*, 313 F.3d 356, 361 (6th Cir. 2002). The general rule is to review a plan administrator's denial of ERISA benefits de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, where, as is the case here, a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious. *Id.*[4] A benefit denial is arbitrary and capricious if the administrative record cannot support the rationale of the benefits denial as a "reasoned explanation." *See Moon v. Unum Provident Corp.*, 405 F.3d 373, 381 (6th Cir. 2005). The "explanation must be consistent with the quantity and quality of the medical evidence that is available on the record." *Id.* (internal quotation and citation omitted).

---

[4]Plaintiff argues that the district court did not properly consider Defendant's conflict of interest insofar as Defendant is both the claims administrator and the insurer. This Court has repeatedly held that such a conflict of interest does not change the standard of review, but is factored into the analysis going to whether the administrator's decision was arbitrary and capricious. *See Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 527 (6th Cir. 2003).

Absent a procedural challenge, the review of the courts is confined to the administrative record as it existed on the date of the administrator's decision. *See Wilkins*, 150 F.3d at 615. If the administrative record so limited supports the administrator's action as a "reasoned" decision, the decision is not arbitrary or capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). As this Court has recently observed, however, "the arbitrary-and-capricious . . . standard does not require us merely to rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004). Indeed, "deferential review is not no review, and deference need not be abject." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).

2.       *Significant References to Medical Records Other Than Plaintiff's Renders the Administrator's Denial Arbitrary and Capricious*

Defendant's decision is unsupported by the record because Defendant's denial letter contains such egregious errors going both to Plaintiff's identify and Plaintiff's medical records that Defendant's decision can only be arbitrary and capricious.

By all indications, Defendant considered someone else's medical records in conjunction with Plaintiff's records in making its 2001 benefits determination. The April 2, 2001 denial letter referenced the wrong address, the wrong social security number, and included references to medical treatments and conditions which Plaintiff never had, including a heart catheter, depression, and a number of drug prescriptions. Few administrator decisions could be more "arbitrary and capricious" than a denial of benefits in partial reliance on the medical records of someone else.

A Fourth Circuit district court has dealt with just such an administrator's decision and concluded that a benefits decision based, in part, on medical records not belonging to the

claimant revealed a decision process so flawed that it was "unprincipled and unreasonable." *See Watson v. Unum Provident Corp.*, 185 F. Supp. 2d 579, 586 (D. Md. 2002). This Court has always required that the record support the reasoning of an administrator's decision. *See Moon*, 405 F.3d 373, 378 (6th Cir. 2005). Someone else's medical records cannot support a "reasoned decision" going to Plaintiff's claim for benefits. Summary judgment for Defendant was improper.

I therefore dissent from the majority's affirmance of the district court's summary judgment for Defendant on Plaintiff's denial of benefits claim.